898 So.2d 1046 (2005)
Alfred Vincent HESS, M.D., and Musculoskeletal Institute Chartered, d/b/a Florida Orthopaedic Institute, a Florida corporation, Appellants,
v.
Noreen WALTON, Appellee.
No. 2D04-758.
District Court of Appeal of Florida, Second District.
March 16, 2005.
Rehearing Denied April 20, 2005.
*1047 Brendan M. Lee of Macfarlane Ferguson & McMullen, Tampa, for Appellants.
Stephen A. Barnes of Abramson, Uiterwyk & Barnes, Tampa; and Gary A. Magnarini of Hicks & Kneale, P.A., Hollywood, for Appellee.
ALTENBERND, Chief Judge.
Dr. Alfred Vincent Hess and Florida Orthopaedic Institute (FOI) appeal a final judgment entered in favor of Noreen Walton in a medical malpractice action. They challenge an award of attorneys' fees that was entered against FOI pursuant to Florida Rule of Civil Procedure 1.442 and section 768.79, Florida Statutes (2003). Although the settlement strategy employed by the plaintiff in this multi-defendant case may not have been foreseen by the legislature when it enacted section 768.79, we affirm. We also certify a question to the supreme court in hopes that confusion generated by Barnes v. The Kellogg Co., 846 So.2d 568 (Fla. 2d DCA 2003), and Matetzschk v. Lamb, 849 So.2d 1141 (Fla. 5th DCA 2003), can be eliminated.

I. THE AWARD OF FEES IN THIS CASE
Ms. Walton sued Dr. Hess for injuries arising from surgery that he performed on March 31, 2000. Prior to surgery, Ms. Walton had consented to undergo surgery to release the first dorsal compartment of the right wrist. Instead of this surgery, Dr. Hess performed a carpel tunnel release on her right wrist. Dr. Hess acknowledged his error. Ms. Walton sued Dr. Hess for this unauthorized surgery and also sued FOI as his employer. Ms. Walton sued FOI only for its vicarious liability under the doctrine of respondeat superior. She did not allege any separate or independent active negligence on the part of FOI. From the earliest stages of this litigation, it was conceded that Dr. Hess had been negligent and that FOI was vicariously liable. The primary dispute in the lawsuit centered on the value of this claim.
Because the value of the claim was the primary issue, the parties submitted several offers of judgment or proposals for settlement pursuant to rule 1.442 and section 768.79. The two most significant proposals were: (1) Ms. Walton's proposal, as plaintiff, to settle with Dr. Hess for $100,000 and with FOI for $15,000, and (2) Dr. Hess and FOI's joint offer to settle all claims for $25,000. All proposals for settlement were rejected. Thereafter, the case proceeded to trial by jury, and the jury returned a verdict in favor of Ms. Walton for $23,500.
Based on this verdict, Ms. Walton filed a motion to tax attorneys' fees against FOI because the verdict was at least 25% greater than her offer to settle with FOI for $15,000. After a hearing on the motion to tax attorneys' fees, the trial court awarded Ms. Walton $99,425 in attorneys' fees against FOI. As a result, the trial court entered an amended final judgment that awarded damages in the amount of $21,169.89 and costs in the amount of $16,791.28 against both FOI and Dr. Hess, and attorneys' fees against FOI alone in the amount of $99,425. This is the judgment on appeal.[1]
*1048 FOI contests the award of attorneys' fees, arguing that two separate and unequal proposals to settle by a single plaintiff made to an active tortfeasor and to a party vicariously liable for the active tortfeasor are impermissible under rule 1.442 and section 768.79. FOI suggests that the tactic of submitting bookend offers  one very low and one quite high  is somehow improper when one defendant is only vicariously liable for the tortious conduct of the other defendant. While we agree with FOI that such offers may often, if not always, be contrary to the public policies that caused the legislature to create these fee-shifting provisions, they are permitted by the language of both the statute and the rule. Moreover, there are logical, strategic reasons why a plaintiff might settle cheaply with one of these parties while demanding a more reasonable settlement from the other. Thus, it cannot be argued that the offers were made in bad faith. We are simply unable to articulate and announce any rule barring such proposals to settle. Accordingly, we affirm the judgment and leave to the legislature the task of reviewing its policies as they relate to defendants who are merely vicariously liable for the acts of another.

II. REASONS EXIST TO "CONSTRUE" RULE 1.442 AND SECTION 768.79 IN FAVOR OF A COMMON LAW OUTCOME
If this trial had been a game of horseshoes, Dr. Hess and FOI would clearly have been the victors because their proposal to settle for $25,000 was closest to the jury's verdict. They were actually willing to pay Ms. Walton about 6% more than the jury awarded.
In horseshoes, Ms. Walton's offer to settle with Dr. Hess for $100,000 would have been farthest from the mark. Because FOI was vicariously liable for Dr. Hess, a settlement with it for $15,000 would not have ended this lawsuit. The State would still have been required to provide a courtroom, a judge, and jury to resolve the dispute. Thus, it seems odd  to say the least  for Ms. Walton's attorneys to receive $99,425 from the defendants when their client rejected the defendants' offer to settle at an amount that was higher than the jury's verdict. It seems unfair that the defendants are penalized or sanctioned with an award of attorneys' fees when they offered the plaintiff more than the jury awarded.[2] The American common law long required parties to pay their own lawyers. The circumstances of this case do not seem to fit within any scenario that would warrant or justify an outcome different from that envisioned by the common law.
Given that the common law outcome would seem to be the better approach in this case, the question is whether rule 1.442 and section 768.79 give us the option to announce a common law outcome and refuse to impose the attorneys' fees as a penalty or sanction against FOI. We recognize that the rule and statute are in derogation of the common law and that they create a penalty. As a result, there are two bases upon which to strictly construe both the rule and the statute.[3]See *1049 Sarkis v. Allstate Ins. Co., 863 So.2d 210 (Fla.2003); Willis Shaw Express, Inc. v. Hilyer Sod, Inc., 849 So.2d 276 (Fla.2003).
As explained in the next section of this opinion, we find no confusion in the rule or statute. This would usually cause us to end any effort to "construe" the rule or the statute to reach a common law outcome and avoid the statutory rule permitting fee-shifting. As the supreme court recently stated:
It is well settled that legislative intent is the polestar that guides a court's statutory construction analysis. See State v. Rife, 789 So.2d 288, 292 (Fla.2001); McLaughlin v. State, 721 So.2d 1170, 1172 (Fla.1998). In determining that intent, we have explained that "we look first to the statute's plain meaning." Moonlit Waters Apartments, Inc. v. Cauley, 666 So.2d 898, 900 (Fla.1996). Normally, "[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." Holly v. Auld, 450 So.2d 217, 219 (Fla.1984) (quoting A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157, 159 (1931)).
Knowles v. Beverly Enters.-Fla., Inc., 898 So.2d 1, ___ (Fla. 2004).
However, in Sarkis, the supreme court reaffirmed its position that a strict construction of this rule and statute is required because the award of attorneys' fees is a sanction. In his concurring opinion, Justice Wells stated:
The reason that the statute and rule are to be strictly construed is not because either is ambiguous but because the statute authorizes and the rule implements an award of attorney fees and because the assessment of attorney fees pursuant to the statute and rule is a sanction. It is the long-standing precedent of this Court that statutes and rules authorizing attorney fees or imposing penalties are to be strictly construed as written and not extended by implication.
Sarkis, 863 So.2d at 224. This language suggests that even a clear and unambiguous statute which imposes attorneys' fees or another penalty must be "construed" in favor of the common law.
We do not believe that the court or Justice Wells intended such an unlimited rule of construction. When we refer to a statute as "clear and unambiguous," we are relying on both the concept of ambiguity and the separate concept of vagueness. A statute is normally regarded as "ambiguous" when its language may permit two or more outcomes. See William D. Popkin, Materials on Legislation: Political Language and the Political Process 185 (2d ed. 1997). It is "vague" when it does not clearly announce any required outcome. Id. Courts construe an ambiguous statute strictly in favor of the common law when they require a common law outcome in a circumstance where two or more outcomes are possible under the language of the statute. They use the rule of strict construction when a statute is vague to assure that the statutory rule, which is in derogation of the common law, is not extended to govern any factual scenario other than those clearly covered by the statute. In Sarkis, Justice Wells was explaining that rule 1.442 and section 768.79 were vague on the issue of whether the fee would be determined with or without a multiplier. The outcome most compatible with the *1050 common law was an outcome that did not include a multiplier within the shifted fee.
Accordingly, Justice Wells was correctly explaining that he would not "extend" the statute to require multiplied fees when the statute was, at best, vague on that issue. The rule of strict construction in favor of the common law is probably used much more often in the context of a vague statute than in the context of an ambiguous statute.
We recognize that we could invoke the rule of strict construction to hold that neither the rule nor the statute expressly addresses cases in which one defendant is liable only on a vicarious basis for the tortious acts of the other. In the absence of such language and given that a settlement with one such defendant does not fully resolve a claim in the manner contemplated by the rule or statute, we could declare the rule and statute to be "vague" and refuse to extend the fee-shifting statute into this portion of the common law. As Chief Justice Pariente has observed, however, there is a point at which a strict construction of a statute to preserve the common law is merely a "forced" construction. Sarkis, 863 So.2d at 228 (Pariente J., dissenting). We conclude that a holding in favor of FOI in this case would require such a forced construction.

III. SECTION 768.79 AND RULE 1.442, WHEN READ TOGETHER, ARE NEITHER VAGUE NOR AMBIGUOUS
Section 768.79(1) allows attorneys' fees and costs to be awarded against a defendant when a plaintiff files a demand for judgment which is not accepted by the defendant and the plaintiff recovers a judgment in an amount at least 25% greater than the offer. § 768.79(1), Fla. Stat. (2003). Section 768.79(1) does not explicitly discuss the complexities that arise in multiparty lawsuits. However, it uses the terms "a plaintiff," "the plaintiff," "a defendant," and "the defendant" in a manner that would allow a plaintiff to make an offer to a specific defendant. Section 768.79(2) describes the content of an offer and requires that the offer "[n]ame the party making it and the party to whom it is being made." This language, of course, suggests that offers can be party specific. By itself, this language might arguably be vague when applied to multiparty cases. The language of the statute may allow for an interpretation limiting the statute to two-party cases.
Rule 1.442 implements section 768.79 and leaves no doubt about the outcome required in this case. See Hilyer Sod, 849 So.2d at 278. Rule 1.442 expressly states:
A proposal may be made by or to any party or parties and by or to any combination of parties properly identified in the proposal. A joint proposal shall state the amount and terms attributable to each party.
Thus, the relevant rule clearly and unambiguously permits Ms. Walton to make differentiated offers to two defendants, even when one is liable only on a vicarious basis for the negligence of the other.
When the trial court granted fees in this case, the Fifth District had already issued its decision in Matetzschk v. Lamb, 849 So.2d 1141 (Fla. 5th DCA 2003), which supported the trial court in this case. In Matetzschk, the Fifth District held that two undifferentiated offers of judgment made by a plaintiff to defendants, one of whom was only vicariously liable, were invalid because they failed to apportion the offer between the two defendants.
In Matetzschk, the Fifth District relied on Hilyer Sod's strict construction of rule 1.442, specifically the portion that states, "A joint proposal shall state the amount and terms attributable to each party." Matetzschk, 849 So.2d at 1144. The Fifth *1051 District even went so far as to say that because of the strict construction required by Hilyer Sod, there was a logical basis for requiring differentiated offers of settlement, even in cases of vicarious liability. Id.
The trial court may not have fully appreciated the applicability of Matetzschk because the Fifth District certified conflict with this court's earlier decision in Barnes, 846 So.2d at 569. We confess that the conflict is not entirely obvious to us. In Matetzschk, the Fifth District misstated the facts in Barnes. The Matetzschk court stated, "We recognize that our instant opinion conflicts with Barnes v. The Kellogg Co., 846 So.2d 568 (Fla. 2d DCA 2003), which held that an undifferentiated offer of settlement from a plaintiff to two defendants, one of whom was only vicariously liable, was proper." Id. (emphasis added). However, this is not what this court held in Barnes. In Barnes, this court allowed two vicariously liable defendants to make a single, undifferentiated proposal to a plaintiff. 846 So.2d at 572. This decision is justified because defendants are logically and legally unable to apportion damages between themselves when one of them is liable on only a vicarious basis.[4]
In the case before us today, the defendants not only wished to have the option of making a joint, unified proposal to settle but also wanted this court to hold that the plaintiff is prohibited from making any other type of offer to the two of them. Nothing in Barnes, rule 1.442, or section 768.79 supports that position. In fact, such a position is properly and expressly prohibited by Matetzschk.
It is worth explaining that the plaintiff may have a logical, strategic reason to make such differentiated offers. It forces one defendant to settle. The plaintiff obtains money that can be used to further prosecute the lawsuit or which can be safeguarded from the risk of a future judgment if the defendants obtain the right to a judgment for their fees. The plaintiff can eliminate the defendant for whom the jury may have sympathy, or the defendant who may be on the brink of bankruptcy. If more than one lawyer is involved, the plaintiff can remove the defendant with the best lawyer. We doubt that these are considerations addressed by the legislature when enacting these fee-shifting provisions, but they are logical considerations and we cannot rule that they are matters that a plaintiff's attorney should disregard when making a good faith offer to settle a case.[5]
It should be noted that the current rule does not leave a pair of defendants such as Dr. Hess and FOI defenseless against the tactic of bookend offers to settle. In this *1052 case, the verdict was $23,500. If our math is correct, the 25% safe haven for both parties existed between $17,625 and $29,375. See § 768.79, Fla. Stat. (2003). Thus, Dr. Hess could have made an offer to settle this case for $29,376. If Dr. Hess had done so, this case would have been placed into a posture where Ms. Walton was entitled to fees from FOI, and Dr. Hess would have been entitled to fees from Ms. Walton. Those fees, presumably, would have roughly offset one another.
We emphasize again that we did not create these rules. We are merely the messenger. The legislature and the supreme court collectively have clearly and unequivocally overruled the common law relating to attorneys' fees under these circumstances, and the result we reach is required by their efforts.
We are well aware that the conflict surrounding Barnes has created a "dilemma" for trial lawyers. See V. Julia Luyster & Jennifer Lodge, "When is a Joint Proposal For Settlement a Valid Proposal For Settlement: Apportionment, Avoiding Ambiguity in Release Language, and the Barnes Dilemma," 24 Trial Advocate Quarterly 12 (2005). If our reading of Matetzschk is correct, the certified conflict in that case may give the supreme court no jurisdiction to resolve the confusion. We conclude that the issue presented by this case is a question of great public importance, and we certify to the supreme court the following question:
DOES A STRICT CONSTRUCTION OF RULE 1.442 AND SECTION 768.79, FLORIDA STATUTES (2003), REQUIRE A COMMON LAW OUTCOME WHEN A PLAINTIFF MAKES TWO SEPARATE PROPOSALS OF SETTLEMENT TO TWO DEFENDANTS WHEN ONE DEFENDANT IS ONLY VICARIOUSLY LIABLE FOR THE OTHER?
Affirmed.
CASANUEVA, J., and DANAHY, PAUL W., Senior Judge, Concur.
NOTES
[1] Dr. Hess and FOI were represented by the same law firm. Following the verdict, Ms. Walton filed a motion to add MAG Mutual Insurance Company to the judgment. The trial court granted this motion and the entire $136,686.27 judgment was entered against MAG. The notice of appeal was filed by Dr. Hess and FOI. At least from a monetary standpoint, the challenged portion of the judgment is adverse only to FOI. MAG has never filed a formal appearance in this appeal and, thus, this insurance company is in the odd, and probably unintentional, posture of being a technical appellee aligned against the interests of its insureds. Although we affirm the judgment in this case, had we decided to reverse the judgment, we would have had authority to reverse only the judgment for attorneys' fees against FOI.
[2] It seems equally unfair to award fees against FOI for its prosecution of this appeal. Despite the serious issues presented in this appeal, we are required to grant Ms. Walton's motion for fees.
[3] We confess some reservations about the concept of strictly interpreting a rule of procedure in favor of the common law when the rule of procedure is itself created by a common law court. Normally, under separation of powers, we interpret a legislative enactment to embody or embrace the common law unless the legislature clearly demonstrates an intention to override the common law. In the context of a judicial rule, separation of powers plays no role. Presumably, we interpret rules strictly in favor of the common law on the theory that judges, valuing stare decisis, do not depart from the common law unless they do so expressly and purposefully.
[4] We note that the Fourth District has decided a case that directly conflicts with Matetzschk. In Hall v. Lexington Insurance Co., 895 So.2d 1161 (Fla. 4th DCA 2005), the Fourth District agreed that rule 1.442 must be strictly construed, but held that a unified joint proposal served by a plaintiff on vicariously liable defendants was proper and did not need to be apportioned because the defendants' claims were unified, not separate and distinct.
[5] These proposals under rule 1.442 and section 768.79 are not immune from the rule announced in section 768.041, Florida Statutes (2003). Section 768.041 requires the trial court to offset funds received in any pretrial settlement with a party such as FOI from the damages later awarded in the verdict. This statute is designed to prevent a double recovery for a single injury. Both parties in this action agree that the offers by Ms. Walton were designed to comply with section 768.041. Thus, if FOI had settled with Ms. Walton, the judgment ultimately entered against Dr. Hess would have been reduced by the $15,000 settlement.