# Supreme Court of Florida

_____

No. SC15-124
_____

**TROY ANDERSON,**
Petitioner,

vs.

**HILTON HOTELS CORPORATION, etc., et al.**
Respondents.

[November 3, 2016]

LEWIS, J.

Petitioner Troy Anderson seeks review of the decision of the Fifth District Court of Appeal in Hilton Hotels Corp. v. Anderson, 153 So. 3d 412 (Fla. 5th DCA 2014), on the ground that it expressly and directly conflicts with decisions of the Second and Fourth District Courts of Appeal on a question of law. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

## FACTS AND PROCEDURAL HISTORY

On September 26, 2008, Anderson was the victim of an armed robbery, carjacking, and shooting that occurred in the parking lot of an Embassy Suites hotel in Orlando. Anderson filed an action against Respondents Hilton Hotels

Corporation (Hilton), W2007 Equity Inns Realty, LLC (W2007), Interstate Management Company, LLC (Interstate), and SecurAmerica, LLC for negligence. Hilton was the parent company of the Embassy Suites franchise; W2007, an investment fund, owned the Embassy Suites hotel where Anderson was attacked; Interstate was the management company that oversaw daily operations of the hotel and hired SecurAmerica to provide security services for the hotel. Anderson's wife, Paula Anderson, also sought damages from the Respondents for loss of consortium.

In October 2011, Anderson proposed separate offers of settlement to Hilton, W2007, and Interstate. He made a separate offer to SecurAmerica in March 2012. Anderson offered to settle his claims with Hilton for $650,000, W2007 for $100,000, Interstate for $650,000, and SecurAmerica for $300,000. The offer made to Hilton, in its entirety, stated:

<u>PROPOSAL FOR SETTLEMENT ON BEHALF OF PLAINTIFF,<br>TROY [ANDERSON], PURSUANT TO RULE 1.442</u>

Plaintiff, TROY ANDERSON, by and through his undersigned attorneys, hereby serves his Proposal for Settlement, pursuant to Rule 1.442 of the Florida Rules of Civil Procedure, to Defendant, HILTON HOTELS CORPORATION, a foreign corporation, doing business as EMBASSY SUITES ORLANDO AT INTERNATIONAL DRIVE AND JAMAICAN COURT, also doing business as HILTON WORLDWIDE, and states in support thereof as follows:

1. This Proposal for Settlement is made pursuant to Florida Statute §768.79, and is extended in accordance with the provisions of Rule 1.442. Fla.R.Civ.P.

2. This Proposal for Settlement is made on behalf of Plaintiff, TROY ANDERSON ("PLAINTIFF"), and is made to Defendant, HILTON HOTELS CORPORATION, a foreign corporation, doing business as EMBASSY SUITES ORLANDO AT INTERNATIONAL DRIVE AND JAMAICAN COURT, also doing business as HILTON WORLDWIDE ("HILTON").

3. This Proposal for Settlement is made for the purpose of settling any and all claims made in this cause by PLAINTIFF against HILTON.

4. That in exchange for SIX HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS ($650,000.00) in hand paid from HILTON, PLAINTIFF agrees to settle any and all claims asserted against HILTON, as identified in Case Number 2009-CA-040473-O, brought in the Circuit Court in and for Orange County, Florida.

5. This Proposal for Settlement is inclusive of all damages claimed by PLAINTIFF, including all claims for interest, costs, and expenses and any claims for attorney's fees.

Other than the specifically designated Respondent and the specific amount proposed, the offers to Hilton, W2007, Interstate, and SecurAmerica were identical.

Additionally, in October 2011, Paula Anderson made separate offers to each of the Respondents to settle her loss of consortium claim. Her offers were $15,000 from Hilton, $15,000 from W2007, $25,000 from Interstate, and $25,000 from SecurAmerica. Her offers were identical to those of Anderson, other than the name of the specifically identified Plaintiff, the specifically identified Respondent, and the specific amount proposed. Prior to trial, however, Paula voluntarily

dismissed her cause of action without prejudice, and Anderson proceeded against each of the respective Respondents alone.

Following one mistrial, the parties commenced a second trial in October 2012. Attorneys from a single legal firm represented Hilton, W2007, and Interstate, while attorneys from a separate firm represented SecurAmerica. Throughout both trials, for ease of reference, Hilton, W2007, and Interstate were collectively referred to as "Embassy Suites." For example, following jury selection, the jury was informed that the defendants were "Embassy Suites" and SecurAmerica, despite the fact that "Embassy Suites" was not specifically named as a party in Anderson's amended complaint upon which the parties proceeded to trial. At one point during trial, the jury even submitted a question to the court, asking, "What is Interstate?" The parties submitted testimony from witnesses who explained the relationships between Hilton, W2007, Interstate, and SecurAmerica.

Near the close of the trial, when discussing jury instructions and closing statements, an attorney from the single firm representing Hilton, W2007, and Interstate stated: "[W]e believe it would be appropriate, and certainly less cumbersome throughout the instructions to simply talk about our client as Embassy Suites, rather than the larger definition that they use, or reference they use throughout their instructions," referring to the three defendants as one and the same. Anderson's attorneys agreed to use that term. Anderson's attorney also

proposed instructions pertaining to agency or vicarious liability, but counsel for Hilton, W2007, and Interstate objected to that instruction: "I don't think it's necessary to do that. And the way the jury instructions are set up, it's identifying Embassy Suites as, effectively, all of our group of defendants. There's really no reason to have a special instruction concerning agency." Anderson's counsel agreed collectively to refer to those defendants as "Embassy Suites" without further instructing the jury on agency or vicarious liability. The court read the jury the following instruction:

> Members of the jury, you can assume, for purposes of your deliberation, that Interstate Hotel and Resorts, Inc., Hilton Hotels Corporation, and W2007 Equity Inns Realty, LLC, are considered one and the same. These defendants will be referred to in the jury instructions and verdict form as Embassy Suites.

The jury found "Embassy Suites" and SecurAmerica to be negligent for Anderson's injuries and that Anderson was not comparatively negligent. The jury further found that "Embassy Suites" was 72% negligent, and SecurAmerica was 28% negligent. Ultimately, the jury found that Anderson sustained a total of $1,702,066 in damages. The trial court entered judgment in favor of Anderson and against Hilton, W2007, and Interstate "collectively hereinafter referred to as EMBASSY SUITES pursuant to the Verdict form agreed to by Plaintiff and all Defendants" in the amount of $1,225,487.52, and against SecurAmerica in the amount of $476,578.48.

- 5 -

Anderson then sought attorneys' fees pursuant to section 768.79, Florida

Statutes, and Florida Rule of Civil Procedure 1.442. The trial court denied

Anderson's motion, finding that Anderson failed to request a verdict assigning

separate findings of fault among Hilton, W2007, and Interstate. Respondents

appealed the award of damages to Anderson, and Anderson separately appealed the

trial court's denial of attorneys' fees. Hilton Hotels, 153 So. 3d at 414. The Fifth

District consolidated the appeals and affirmed the decisions of the trial court;

however, the district court's opinion only addressed Anderson's appeal of the

denial of attorneys' fees. Id. Anderson argued that he was entitled to attorneys'

fees pursuant to section 768.79 and Rule 1.442 because his offers of settlement

satisfied the requirements of the statute and rule. Id. at 415-16. However, both the

trial court and the district court disagreed, concluding that the term "PLAINTIFF"

in Anderson's offer could reasonably be interpreted to include both Anderson and

his wife, Paula.

The Fifth District relied on its earlier decision, Hibbard ex rel. Carr v.

McGraw, 918 So. 2d 967 (Fla. 5th DCA 2005), for support. Hilton Hotels, 153 So.

3d at 416. In Hibbard, Amanda Carr was a minor who was involved in an

automobile accident with Michael McGraw. Hilton, 153 So. 3d at 416. Carr's

mother, Faith Hibbard, sued McGraw and his employer, Dual Incorporated, on

Carr's behalf. Id. The defendants jointly offered a proposal of settlement in favor

of Carr to settle "all claims against Defendants, MICHAEL MCGRAW and DUAL

INCORPORATED." Id. (citing Hibbard, 918 So. 2d at 969). The Fifth District

ultimately determined that this proposal was ambiguous because it could have been

reasonably construed to settle either Carr's claim separately or the claims of both

Carr and Hibbard. Id. (citing Hibbard, 918 So. 2d 971-72). Likewise, the Fifth

District below determined that Anderson's proposal lacked sufficient clarity

regarding whether it settled only Anderson's claim or both Anderson's and Paula's

claims. Id.

Finally, the district court cursorily agreed with the trial court that

Anderson's separate proposals were unenforceable for the purpose of obtaining

attorneys' fees:

> Because Anderson requested to have these three entities treated as one
> by the jury, and given that the judgment obtained against the
> "Embassy Suites" defendants was actually less than the sum of the
> demands for judgment made against them, the purpose behind the
> enactment of section 768.79 (i.e., to sanction a party for rejecting a
> presumptively reasonable proposal for settlement) would be ill-served
> by assessing attorney's fees against Hilton, W2007, and Interstate.

Id. at 416-17.

This review follows.

## ANALYSIS

### Whether Anderson's Proposed Offer of Settlement Was Ambiguous

Attorneys' fees under offers of judgment are governed by section 768.79, Florida Statutes (2011), and Florida Rule of Civil Procedure 1.442. In relevant part, section 768.79 reads:

(1) In any civil action for damages filed in the courts of this state . . . [i]f a plaintiff files a demand for judgment which is not accepted by the defendant within 30 days and the plaintiff recovers a judgment in an amount at least 25 percent greater than the offer, she or he shall be entitled to recover reasonable costs and attorney's fees incurred from the date of the filing of the demand. . . .

(2) The making of an offer of settlement which is not accepted does not preclude the making of a subsequent offer. An offer must:

(a) Be in writing and state that it is being made pursuant to this section.

(b) Name the party making it and the party to whom it is being made.

(c) State with particularity the amount offered to settle a claim for punitive damages, if any.

(d) State its total amount.

The offer shall be construed as including all damages which may be awarded in a final judgment.

. . . .

(6) Upon motion made by the offeror within 30 days after the entry of judgment or after voluntary dismissal or involuntary dismissal, the court shall determine the following:

. . . .

(b) If a plaintiff serves an offer which is not accepted by the defendant, and if the judgment obtained by the plaintiff is at least 25

percent more than the amount of the offer, the plaintiff shall be awarded reasonable costs, including investigative expenses, and attorney's fees, calculated in accordance with the guidelines promulgated by the Supreme Court, incurred from the date the offer was served.

. . . For purposes of the determination required by paragraph (b), the term "judgment obtained" means the amount of the net judgment entered, plus any postoffer settlement amounts by which the verdict was reduced.

§ 768.79, Fla. Stat. (2011). The relevant portions of the current version of Rule 1.442 provide:

(c) **Form and Content of Proposal for Settlement.**

(1) A proposal shall be in writing and shall identify the applicable Florida law under which it is being made.

(2) A proposal shall:

(A) name the party or parties making the proposal and the party or parties to whom the proposal is being made;

(B) state that the proposal resolves all damages that would otherwise be awarded in a final judgment in the action in which the proposal is served, subject to subdivision (F);

(C) state with particularity any relevant conditions;

(D) state the total amount of the proposal and state with particularity all nonmonetary terms of the proposal;

(E) state with particularity the amount proposed to settle a claim for punitive damages, if any;

(F) state whether the proposal includes attorneys' fees and whether attorneys' fees are part of the legal claim; and

(G) include a certificate of service in the form required by rule 1.080.

(3) A proposal may be made by or to any party or parties and by or to any combination of parties properly identified in the proposal. A joint proposal shall state the amount and terms attributable to each party.

(4) Notwithstanding subdivision (c)(3), when a party is alleged to be solely vicariously, constructively, derivatively, or technically liable, whether by operation of law or by contract, a joint proposal made by or served on such a party need not state the apportionment or contribution as to that party. Acceptance by any party shall be without prejudice to the rights of contribution or indemnity.

Proposals under the offer of judgment statute must strictly conform to these statutory and procedural requirements to entitle the offeror to attorneys' fees because the statute is in derogation of the common law that ordinarily requires each party to pay its own attorneys' fees. See, e.g., Pratt v. Weiss, 161 So. 3d 1268, 1271 (Fla. 2015) (citing Willis Shaw Express, Inc. v. Hilyer Sod, Inc., 849 So. 2d 276, 278 (Fla. 2003); Gershuny v. Martin McFall Messenger Anesthesia Prof'l Ass'n, 539 So. 2d 1131, 1132 (Fla. 1989)). This Court reviews a party's entitlement to attorneys' fees pursuant to section 768.79 and Rule 1.442 de novo. E.g., id. (citing Frosti v. Creel, 979 So. 2d 912, 915 (Fla. 2008)).

Additionally, the proposal under the statute and rule must be sufficiently clear and free of ambiguity to allow the offeree the opportunity to fully consider the proposal. State Farm Mut. Auto. Ins. Co. v. Nichols, 932 So. 2d 1067, 1079 (Fla. 2006). However, this Court has not required the elimination of every ambiguity—only reasonable ambiguities:

- 10 -

> We recognize that, given the nature of language, it may be impossible to eliminate all ambiguity. The rule does not demand the impossible. It merely requires that the settlement proposal be sufficiently clear and definite to allow the offeree to make an informed decision without needing clarification. If ambiguity within the proposal could reasonably affect the offeree's decision, the proposal will not satisfy the particularity requirement [of Rule 1.442(c)(2)(C)-(D)].

Id. Ultimately, "[p]roposals for settlement are intended to end judicial labor, not create more." Id. (quoting Lucas v. Calhoun, 813 So. 2d 971, 973 (Fla. 2d DCA 2002)). Accordingly, courts are discouraged from "nitpicking" proposals for settlement to search for ambiguity. Carey-All Transp., Inc. v. Newby, 989 So. 2d 1201, 1206 (Fla. 2d DCA 2008) (citing Nichols, 932 So. 2d at 1079).

The decision below is inconsistent with decisions of other district courts of appeal that have addressed whether a settlement offer is ambiguous when it does not address other parties to the action. The Second District recently rejected an argument that a settlement proposal was ambiguous and therefore unenforceable with respect to attorneys' fees when the proposal was similar to the one at issue here. Miley v. Nash, 171 So. 3d 145 (Fla. 2d DCA), rev. denied, Nash v. Miley, 192 So. 3d 40 (Fla. 2015). Miley involved an accident between Martha Nash and Kyle Miley in a car owned by Kyle's father, Glenn Miley. Id. at 147. Martha filed a complaint against Kyle and Glenn seeking damages for her injuries, and Garfield Nash, Martha's husband, joined the action under a separate claim for loss of consortium. Id. Prior to trial, Kyle offered a settlement proposal to Martha in "an

attempt to resolve all claims and causes of action resulting from the incident or accident giving rise to this lawsuit brought by Plaintiff Martha Nash against Defendant Kyle Miley." Id. The proposal contained a condition that Martha dismiss her claims against both Kyle and Glenn, but did not address Garfield Nash's pending claim for loss of consortium, which was ultimately voluntarily dismissed prior to trial. Id. After Martha obtained a favorable jury verdict that was significantly less than the amount in Kyle's offer, the trial court denied Kyle's motion for attorneys' fees for several reasons, including the fact that the offer failed to address Garfield Nash's loss of consortium claim. Id.

On appeal, the Second District reversed and concluded that the proposal complied with Rule 1.442. Id. Although the court acknowledged that the terms "all claims" that "[gave] rise to the lawsuit" could have been more definite, it concluded that these terms were not so ambiguous to prevent Martha Nash from making an informed decision about her claim. Id. at 148. The court also held that the proposal did not need to address Garfield Nash's separate claim for loss of consortium, which was a separate, identifiable, and derivative claim. Id. at 148-49 ("Because the proposal explicitly stated that it was to cover all claims brought by Martha Nash, it was not deficient for failing to address the other pending claim in the lawsuit brought by an entirely different plaintiff.").

The Fourth District has also rejected similar attempts to inject ambiguity into otherwise sufficient proposals.  See Alamo Fin., L.P. v. Mazoff, 112 So. 3d 626 (Fla. 4th DCA 2013); Land & Sea Petroleum, Inc. v. Bus. Specialists, Inc., 53 So. 3d 348 (Fla. 4th DCA 2011).  Alamo Financing involved a motor vehicle accident between the plaintiff, Matthew Mazoff, and a defendant, Paola Alvarado-Fernandez.  112 So. 3d at 627.  Alamo Financing owned the vehicle driven by Alvarado-Fernandez, while a separate entity, Alamo Rental (US), Inc., leased the vehicle to Alvarado-Fernandez.  Id.  Mazoff sought damages from Alamo Financing and Alvarado-Fernandez, specifically alleging that Alamo Financing was vicariously liable for Alvarado-Fernandez's negligence.  Id.  Alamo Financing proposed an offer of settlement to Mazoff that contained a condition that Mazoff would release Alamo Financing and "their parent corporations, subsidiaries, officers, directors, and employees" from any and all claims.  Id.  Mazoff subsequently moved to add Alamo Rental as a defendant after learning that Alamo Rental was the entity that leased the car.  Id. at 628.

After obtaining a judgment in its favor, Alamo Financing unsuccessfully moved for attorneys' fees before the trial court.  Id.  On appeal, the Fourth District agreed with Alamo Financing that the proposal was unambiguous and therefore enforceable.  Id. at 629.  The court rejected Mazoff's argument that the language "all [c]laims made in the present action by the party to whom this proposal is made

- 13 -

including any claims that could be made against Defendant ALAMO FINANCING, L.P., which arise out of the same occurrence or event set forth in this action," could extinguish Mazoff's claims against Alvarado-Fernandez. Id. at 629-30. Specifically, the court acknowledged that when read in isolation, this clause could suggest that Mazoff's separate claims against Alvarado-Fernandez may be affected by acceptance of Alamo Financing's offer; nonetheless, the context of the entire offer indicated that Alamo Financing was the only offeror and the only party to be dismissed from suit upon Mazoff's acceptance. Id. at 630. The Fourth District similarly dispensed with Mazoff's suggestion that the proposal was ambiguous because it could have constituted a release of Alamo Rental, which was not a party to the lawsuit at the time the offer was made. Id. at 630-31.

In Land & Sea Petroleum, an offeror-seller made two separate proposals for settlement to the two different brokers with whom it was engaged in a contract dispute. 53 So. 3d at 351-52. Other than the name of each broker-offeree, the proposals were identical and indicated that they attempted to resolve "all claims as well as any and all claims that could have been or should have been brought by" the designated broker-offeree against the offeror-seller. Id. at 352. The Fourth District determined that this offer was sufficiently clear to support an award of attorneys' fees. Id. at 353 ("The brokers' reliance on the fact that the seller did not expressly state that it would be the party paying the [amount offered] seems to be

- 14 -

the type of 'nit-picking' which the [Second District] cautioned against in <u>Carey-All</u>.").

Thus, the decision of the Fifth District below expressly and directly conflicts with these decisions of the Second and Fourth Districts. In <u>Miley</u>, <u>Alamo Financing</u>, and <u>Land & Sea Petroleum</u>, an offer by a single named offeror to a single offeree was considered sufficiently clear and enforceable, although it did not address separate pending claims of other parties to the litigation. However, the Fifth District below determined that such an offer was ambiguous and unenforceable because it could have affected the unaddressed claims of Paula Anderson. Therefore, we properly have jurisdiction of this matter and quash the decision below.

The reading of Anderson's offer as espoused by the Respondents, the trial court, and the Fifth District below is unreasonable and in contravention of this Court's direction in <u>Nichols</u>. The proposal clearly and consistently used the singular term "PLAINTIFF," which was defined as Troy Anderson in Paragraph 2. Moreover, Paragraph 3 indicated that each proposal was designed to settle "any and all claims of PLAINTIFF [Troy Anderson] against [RESPONDENT]," which by its clear terms defined that the only parties to be affected by acceptance of the proposal would be Troy Anderson and the designated Respondent. Finally, the offer made by Troy Anderson had no reference to Paula Anderson or her loss of

- 15 -

consortium claim, which Anderson was not obliged to address in his claim. See Miley, 171 So. 3d at 148-49. On this point, we note that Paula Anderson made her own separate, nearly simultaneous offers to each of the Respondents. If a party receives two simultaneous offers from two separate parties, common sense dictates that the offeree should possess all the information necessary to determine whether to settle with one or both of the offerors. See Nichols, 932 So. 2d at 1079 ("[T]he settlement proposal [must] be sufficiently clear and definite to allow the offeree to make an informed decision without needing clarification."). In reading the entirety of Anderson's proposals, the only reasonable interpretation is that Troy Anderson offered to settle only his claims with each Respondent in his offer.

We reject the suggestion by the Respondents that Troy Anderson's offer was actually a joint offer intended to settle the claims of both Troy and Paula Anderson, as occurred in Audiffred v. Arnold, 161 So. 3d 1274 (Fla. 2015). Not only would such a reading be contrary to the plain language of Troy Anderson's proposal, but the proposal in Audiffred was factually distinguishable from the offer in this case. Although the proposal in Audiffred indicated that only one party (Valerie Audiffred) made the offer, the proposal also indicated that it was attempting to resolve "[a]ny and all claims Plaintiffs have brought against the Defendant," and it expressly indicated that both Audiffred and her husband, the other plaintiff in the matter, would dismiss their respective claims against the defendant upon his

acceptance of the offer. Id. at 1276 (emphasis supplied). We explained that this proposal was a joint offer that was ultimately unenforceable because it lacked apportionment among the plaintiffs. Id. at 1279-80. By contrast, Troy Anderson's proposals were not joint proposals and made no reference to Paula's claim for loss of consortium. Apportionment simply was not an issue below.

Relatedly, the Respondents assert that Troy Anderson's counsel admitted during an evidentiary hearing on Anderson's entitlement to attorneys' fees that the purpose of the offer was to settle the claims of both Troy and Paula. Unfortunately, the record before this Court does not contain the transcript of this evidentiary hearing. Nonetheless, any such statement would ultimately be irrelevant to the issue at hand: whether the proposals submitted by Troy Anderson were sufficient to allow each Respondent to "make an informed decision" about settling Troy Anderson's claim "without needing clarification." Nichols, 932 So. 2d at 1079. The underlying motives of a party that proposes settlement are unrelated to the strict requirements of the offer of judgment statute and rule, or their purpose, which is to promote prompt and good-faith efforts to settle claims. See, e.g., id. ("Proposals for settlement are intended to end judicial labor, not create more.") (citing Lucas, 813 So. 2d at 973); see also § 768.79(7), Fla. Stat. (granting judicial discretion to determine if an offer was not made in good faith and disallow an otherwise mandatory award of fees). Therefore, we conclude that

Troy Anderson's proposals were sufficiently clear for the purpose of determining his entitlement to attorneys' fees.

### Whether Anderson's Individual Offers May Be Compared to the Unapportioned Final Judgment

The Respondents also insist that Troy Anderson's proposals cannot be enforced because he served individual offers to each Respondent, but only obtained judgments against "Embassy Suites" and SecurAmerica; thus, the collective judgment against "Embassy Suites" cannot be compared to individual offers made to Hilton, W2007, and Interstate when vicarious liability was not pled or found below. Alternatively, the defendant-respondents argue that Troy Anderson offered to settle with the collective "Embassy Suites" Respondents for $1.4 million (based on offers to Hilton for $650,000, W2007 for $100,000, and Interstate for $650,000), but obtained a judgment against "Embassy Suites" for $1.25 million, which the Respondents assert does not satisfy the 25% threshold of section 768.69(1). In affirming the trial court's denial of Anderson's motion for attorneys' fees, the Fifth District stated that Anderson's offer was unenforceable to recover attorneys' fees because "the purpose behind the enactment of section 768.79 (i.e., to sanction a party for rejecting a presumptively reasonable proposal for settlement) would be ill-served. . . ." Hilton Hotels, 153 So. 3d at 416-17. Notwithstanding this vague and unsupported statement, we disagree.

This Court has explained that the offer of judgment statute creates an entitlement to attorneys' fees when the statutory and procedural requirements have been satisfied. Attorneys' Title Ins. Fund, Inc. v. Gorka, 36 So. 3d 646, 649 (Fla. 2010). The mandatory language of section 768.79 reinforces the notion that a proper offer automatically creates that entitlement, unless the offer is made in bad faith. See § 768.79(1), Fla. Stat. ("[I]f a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to recover reasonable costs and attorney's fees . . . . If a plaintiff files a demand for judgment which is not accepted by the defendant within 30 days . . . she or he shall be entitled to recover reasonable costs and attorney's fees . . . .") (emphasis supplied); § 768.79(7)(a) (granting courts discretion to withhold fees to which a party is otherwise entitled if the court determines the offer was not made in good faith). Thus, an offer that complies with section 768.79 and Rule 1.442 creates a "mandatory right" to collect attorneys' fees. TGI Friday's, Inc. v. Dvorak, 663 So. 2d 606, 611 (Fla. 1995) (citing Schmidt v. Fortner, 629 So. 2d 1036 (Fla. 4th DCA 1993)).

Further, it is clear that this entitlement to attorneys' fees hinges on the "judgment obtained," as opposed to a verdict form returned by the jury. § 768.79(6), Fla. Stat. (defining "judgment obtained" by a plaintiff as "the amount of the net judgment entered, plus any postoffer settlement amounts by which the

- 19 -

verdict was reduced"); <u>Frosti</u>, 979 So. 2d at 916; <u>White v. Steak & Ale of Fla., Inc.</u>, 816 So. 2d 546, 549-50 (Fla. 2002) (citing <u>Perez v. Circuit City Stores, Inc.</u>, 721 So. 2d 409, 412 (Fla. 3d DCA 1998)).  However, neither section 768.79 nor Rule 1.442 specifies that a plaintiff must obtain a judgment from a designated party to be entitled to attorneys' fees.  This entitlement is only dependent upon a sufficient offer and judgment obtained, not a judgment "obtained from designated offerees."  Thus, the district court's concern with Anderson's failure to request an assignment of fault among Hilton, W2007, and Interstate was misplaced.

Additionally, the Second District has held that it is improper to combine separate offers and compare them to the judgment obtained when evaluating a party's entitlement to fees.  <u>Hess v. Walton</u>, 898 So. 2d 1046 (Fla. 2d DCA 2005); <u>Thornburg v. Pursell</u>, 476 So. 2d 323, 325 (Fla. 2d DCA 1985).  In <u>Hess</u>, Noreen Walton filed an action against her doctor, Dr. Alfred Hess, for negligence, and against his employer, Florida Orthopaedic Institute (FOI), for vicarious liability. 898 So. 2d at 1047.  Both Hess and FOI were represented by the same law firm. <u>Id.</u> at 1047 n.1.  Walton proposed to settle with Hess for $100,000 and with FOI for $15,000.  After the jury returned a verdict in favor of Walton for $23,500, the trial court awarded Walton attorneys' fees against FOI because the judgment entered was at least 25% greater than Walton's offer to FOI for $15,000.  <u>Id.</u>

The Second District subsequently rejected FOI's appeal regarding the award of attorneys' fees.  Id. at 1048.  The court first explained that section 768.79 and Rule 1.442 were neither ambiguous nor vague; thus, under a strict construction of the statute and rule, the award against FOI was mandated.  Id. at 1049-50.  Further, the court acknowledged that absent allegations or evidence of bad faith on the part of the offeror, there may be valid, strategic reasons for an offeror to submit such differentiated offers to separate parties:

> It is worth explaining that the plaintiff may have a logical, strategic reason to make such differentiated offers.  It forces one defendant to settle.  The plaintiff obtains money that can be used to further prosecute the lawsuit or which can be safeguarded from the risk of a future judgment if the defendants obtain the right to a judgment for their fees.  The plaintiff can eliminate the defendant for whom the jury may have sympathy, or the defendant who may be on the brink of bankruptcy.  If more than one lawyer is involved, the plaintiff can remove the defendant with the best lawyer.  We doubt that these are considerations addressed by the legislature when enacting these fee-shifting provisions, but they are logical considerations and we cannot rule that they are matters that a plaintiff's attorney should disregard when making a good faith offer to settle a case. . . .

Id. at 1051 (footnote omitted).

Additionally, in Thornburg, several defendants made separate offers to plaintiffs in the amounts of $500 and $1,500.  476 So. 2d at 324-25.  Judgment was ultimately entered in favor of the plaintiffs for $2,000, but the trial court denied the plaintiffs' motion to recover costs after considering the collective offers of settlement by the various defendants.  Id. at 324.  The Second District reversed that

order after concluding that it was improper to combine the offer of $500 with the offer of $1,500 and compare those against the final judgment of $2,000, noting that Rule 1.442 did not discuss the possibility of aggregating offers. Id. at 324-25.

We agree with the persuasive reasoning of the Second District. The trial court's denial of Troy Anderson's motion for attorneys' fees and the Fifth District's decision affirming that denial ignores both the facts of this case and the clear requirements of the offer of judgment statute and rule. At the very least, Anderson's offer to SecurAmerica alone created a right to attorneys' fees upon entry of judgment against SecurAmerica: Anderson proposed to settle his claims against SecurAmerica for $300,000 and obtained a judgment against SecurAmerica for $476,578.48, which is approximately 159% of Anderson's offer—well above the 25% threshold in section 768.79(6)(b).

Moreover, Troy Anderson is also entitled to attorneys' fees based on his separate offers to Hilton, W2007, and Interstate. Anderson offered to settle with Hilton for $650,000, with W2007 for $100,000, and with Interstate for $650,000. The trial court entered a judgment against these Respondents in the amount of $1,225,487.52, which is approximately 189% of the offers Anderson made to Hilton and Interstate, and approximately 1225% of the offer made to W2007. The only way that these offers could not satisfy the statutory requirement would be if the offers were to be aggregated, which cannot be tolerated under a strict

construction of section 768.79. See id.; see also Pratt, 161 So. 3d at 1271 (explaining that the offer of judgment statute must be strictly construed). Thus, Troy Anderson's offers to Hilton, W2007, and Interstate complied with the requirements of section 768.79 and Rule 1.442; upon obtaining a judgment that was at least 25% greater than any one of these offers, Troy Anderson became entitled to attorneys' fees. The fact that the judgment entered by the trial court did not specify that Hilton, W2007, and Interstate were jointly and severally liable to Anderson for this judgment did not otherwise destroy this entitlement.

We reject the argument of the Respondents that Troy Anderson waived this right by agreeing with the defendants' proposal to refer to Hilton, W2007, and Interstate collectively as "Embassy Suites" during trial. As explained above, nothing in the offer of judgment statute or rule requires a plaintiff to obtain a judgment against a specific defendant where there are multiple parties to the action; the plaintiff must simply obtain a judgment that is at least 25% greater than the offer. § 768.79(6)(b), Fla. Stat. The fact that all parties agreed to refer to Hilton, W2007, and Interstate as "Embassy Suites" collectively for the purposes of minimizing juror confusion does not affect Troy Anderson's entitlement to attorneys' fees in this case when that entitlement is contingent only upon a satisfactory offer of settlement and judgment that is at least 25% greater than that offer.

# CONCLUSION

Reading the plain language of Troy Anderson's offers, we hold that these offers to settle his claims against the Respondents were unambiguous. The "nitpicking" of these offers by the courts below to find otherwise unnecessarily injected ambiguity into these proceedings and created more judicial labor, not less. Cf. Nichols, 932 So. 2d at 1079. Furthermore, the plain language of both section 768.79 and Florida Rule of Civil Procedure 1.442 indicates that Troy Anderson's entitlement to attorneys' fees was actualized after he submitted sufficient offers and obtained satisfactory judgments in his favor. The fact that the parties chose to collectively refer to some of the Respondents for the sake of convenience before the jury does not alter that entitlement. Therefore, we quash the decision below and remand for further proceedings consistent with this opinion.

It is so ordered.

LABARGA, C.J., and PARIENTE, QUINCE, and PERRY, JJ., concur.
CANADY and POLSTON, JJ., concur in result.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions

Fifth District - Case Nos. 5D13-2552 & 5D13-2553

(Orange County)

Barbara A. Eagan of Eagan Appellate Law, PLLC, Orlando, Florida; Thomas D. Hall and John S. Mills of The Mills Firm, P.A., Tallahassee, Florida; W. Riley Allen of Riley Allen Law, Orlando, Florida; Simon L. Wiseman of The Wiseman Law Firm, P.A., Orlando, Florida; and Margaret E. Kozan of Margaret E. Kozan, P.A., Winter Park, Florida,

     for Petitioner

Pamela A. Chamberlin of Mitrani, Rynor, Adamsky & Toland, P.A., Miami Beach; and Michael R. D'Lugo of Wicker, Smith, O'Hara, McCoy & Ford, P.A., Orlando, Florida,

     for Respondent