DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**COLLETTE CURTIS, DONALD CAMPEAU, GLORY HARRIS,
MIGUEL PEREZ, EANIS LEVINSON, ALBERTO CASAS,
BEKO DAWKINS, EARL MARTIN,** and **HAROLD KEYS,**
individually and on behalf of all others similarly situated,
Appellants,

v.

**THE CITY OF HOLLYWOOD,**
Appellee.

No. 4D2022-3166

[February 7, 2024]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Keathan B. Frink, Judge; L.T. Case No. CACE14-008722.

Anthony S. Adelson of Anthony S. Adelson, P.A., Hallandale Beach, Sharon Bourassa, New Smyrna Beach, and Brittney L. Parks of Legal Aid Service of Broward County, Plantation, for appellants.

Laura K. Wendell and Daniel L. Abbott of Weiss Serota Helfman Cole & Bierman, P.L., Coral Gables, for appellee.

MAY, J.

The consequences of community redevelopment—specifically, a city's responsibility for displaced residents under section 163.360(7)(a), Florida Statutes (2022)—create the issue in this appeal. Thirty-eight former tenants of the Townhouse Apartments appeal a final summary judgment entered in the City of Hollywood's ("the city") favor. The tenants argue the city failed to determine the feasibility of the relocation assistance provided by the developer before approving the redevelopment. Because the statute is clear on its face and does not require such a determination, we affirm the final judgment.

- ***The Background***

The tenants lived in the Townhouse Apartments, owned by SFD Hollywood LLC ("SFD Hollywood"). In 2004, the city entered into a development agreement with SFD Hollywood that called for the Townhouse Apartments' destruction and redevelopment. The development agreement also provided relocation assistance to the tenants.

SFD Hollywood subsequently transferred its rights and interests in the Townhouse Apartments to Block 55, LLC. Block 55, LLC merged with Hollywood Circle, LLC ("the developer"), making the developer liable for Block 55's past and future obligations under the development agreement.

On September 27, 2013, the tenants received a notice of lease termination from the developer. The notice stated all tenancies were terminated as of November 30, 2013. The notice further indicated the property manager was allowed to assist the tenants in "expediting [their] transition from [the Townhouse Apartments]." Last, the notice advised the tenants they would receive their security deposit back if they moved out by a certain date.

The property manager posted a list of moving companies, rental properties, and realtors in the area. But neither the city nor the developer provided direct relocation assistance. The tenants sued and claimed, among other things, the city violated section 163.360(7)(a), Florida Statutes (2013), "by failing to implement a relocation plan" and/or "by failing to provide relocation assistance" ("count I").[1]

The city moved to dismiss, arguing the tenants failed to state a cause of action because the city found "feasible methods" existed for relocating displaced residents. Thus, the city did what section 163.360(7)(a) required. The trial court denied the city's motion to dismiss. The city filed an answer and affirmative defenses, raising the same argument.

The city then moved for summary judgment, arguing section 163.360(7)(a)'s plain and unambiguous language required the city only to find a "feasible method" existed for relocating displaced residents. The statute is silent about the adequacy of that "feasible method."

---

[1] The tenants also sued the city and the developer for violating section 163.360's notice provisions and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). Neither of those claims are involved in this appeal.

The tenants responded the city's failure to make specific findings, supporting its conclusion that a "feasible method" *existed*, violated section 163.360(7)(a). According to the tenants, section 163.360(7)(a) requires a municipality to assess a proposed relocation method's feasibility—such as hearing testimony or gathering evidence. The tenants argued the city's interpretation would lead to an unreasonable result that defeats the legislative intent of the statute: to ensure displaced residents have somewhere to go.

The tenants also argued section 163.360(7)(a) is ambiguous and vague because it does not provide a municipality with directions for dealing with displaced residents. They suggested the trial court should go beyond a plain reading of the statute to derive its meaning.

The trial court granted the city's motion for summary judgment in part, finding section 163.360(7)(a)'s terms were unambiguous, and its plain and ordinary meaning controlled. The trial court found section 163.360(7)(a)'s plain meaning did *not* require the city to determine the adequacy of the "feasible method." Accordingly, the city followed the law when it found a "feasible method" existed for relocating the tenants.

The trial court granted the city's motion on these grounds and entered a final summary judgment on count I in the city's favor. The tenants now appeal.

- ***The Appeal***

The tenants argue the trial court erred in entering summary judgment because the trial court engaged in the wrong statutory interpretation analysis. The tenants claim our supreme court's holding in *Conage v. United States*, 346 So. 3d 594 (Fla. 2022), changed the way Florida courts should engage in statutory interpretation.[2] The tenants suggest trial

---

[2] In *Conage*, 346 So. 3d at 598, the Florida Supreme Court held its statutory interpretation guidelines in *Holly v. Auld*, 450 So. 2d 217, 219 (Fla. 1984), were "misleading and outdated." It explained:

> More recently our Court has said that judges must "exhaust 'all the textual and structural clues'" that bear on the meaning of a disputed text. *Alachua County v. Watson*, 333 So. 3d 162, 169 (Fla. 2022) (quoting *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1480 (2021)). That is because "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader

3

courts can now look to the canons of statutory interpretation, even when looking at a statute's plain meaning.

- *Preservation*

The city responds the tenants raised their *Conage* argument for the first time on appeal, and it is thus unpreserved. On the merits, the city argues the tenants demand we interpret section 163.360(7)(a) more broadly than written. The city contends the statute requires only a finding that a "feasible method" for relocating displaced residents exists. The statute does not require a finding that the feasible method is "adequate." The city also argues the tenants' vagueness and ambiguity argument is without merit.

We review de novo a trial court's ruling on a motion for summary judgment. *Volusia County v. Aberdeen at Ormond Beach, L.P.,* 760 So. 2d 126, 130 (Fla. 2000). A trial court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fla. R. Civ. P. 1.510(a). A movant is entitled to judgment as a matter of law when the evidence "is so one-sided," a reasonable fact finder could not find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986).

- *The Merits*

---

context of the statute as a whole." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341 (1997).

Viewed properly as rules of thumb or guides to interpretation, rather than as inflexible rules, the traditional canons of statutory interpretation can aid the interpretive process from beginning to end (recognizing that some canons, like the rule of lenity, by their own terms come into play only after other interpretive tools have been exhausted). It would be a mistake to think that our law of statutory interpretation requires interpreters to make a threshold determination of whether a term has a "plain" or "clear" meaning in isolation, without considering the statutory context and without the aid of whatever canons might shed light on the interpretive issues in dispute.

*Conage,* 346 So. 3d at 598.

As with all statutory interpretation questions, we start with the statute's words.[3]  Section 163.360(7) provides in relevant part:

> Following [a properly noticed public] hearing, **the governing body may approve the community redevelopment** and the plan therefor **if it finds** that: (a) A **feasible method exists** for the location of families who will be displaced from the community redevelopment area in decent, safe, and sanitary dwelling accommodations within their means and without undue hardship to such families . . . .

(Emphasis added).

When, as here, a statute's language "is clear, unambiguous, and conveys a clear and definite meaning," that statute "must be given its plain and obvious meaning."  *Liberty Mut. Ins. Co. v. Pan Am Diagnostic Servs., Inc.*, 347 So. 3d 7, 10 (Fla. 4th DCA 2022) (quoting *Precision Diagnostic, Inc. v. Progressive Am. Ins. Co.,* 330 So. 3d 32, 34 (Fla. 4th DCA 2021)).

"In ascertaining the plain meaning of [a] statute, [a trial] court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole."  *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988).  "[T]he first step towards discerning the plain meaning of [a word] is to 'consult references [that are] commonly relied upon to supply the accepted meaning of [that word].'"  *Penzer v. Transp. Ins. Co.*, 29 So. 3d 1000, 1005 (Fla. 2010) (quoting *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 292 (Fla. 2007) (alterations in original)).

Here, the statute's plain language requires the city to find a "feasible method" for relocating displaced residents exists prior to approving a community redevelopment plan, and nothing else.  The word "find" means "[t]o determine a fact in dispute by verdict or decision."  *Find, Black's Law Dictionary* (11th ed. 2019).  So, all the city needed to do was "find," or "determine," that a "feasible method exist[ed] for the [re]location" of displaced families.  *See* § 163.360(7)(a), Fla. Stat. (2013).  Simply put, the

---

[3] The city argues the tenants cannot raise *Conage* on appeal, because they failed to raise it in the trial court.  *See Steinhorst v. State*, 412 So. 2d 332, 338 (Fla. 1982) ("Except in cases of fundamental error, an appellate court will not consider an issue unless it was presented to the lower court.  Furthermore, in order for an argument to be cognizable on appeal, it must be the specific contention asserted as legal ground for the objection, exception, or motion below.").  Despite this, we apply *Conage* because it is now the law.

statute imposes *no* requirement for the city to evaluate or determine the adequacy of the "feasible method."

Here, the city properly found a "feasible method" existed, and section 163.370(7)(a) required nothing more. The trial court thus did not err when it entered summary judgment for the city.

Lastly, the tenants' vagueness and ambiguity argument must also fail. Vagueness and ambiguity are distinct legal concepts, with different definitions. *See Hess v. Walton*, 898 So. 2d 1046, 1049 (Fla. 2d DCA 2005). "A statute is normally regarded as 'ambiguous' when its language may permit two or more outcomes." *Id.* "[A statute] is 'vague' when it does not clearly announce any required outcome." *Id.* Section 163.360(7) is neither. We therefore affirm.

*Affirmed.*

CIKLIN and GERBER, JJ., concur.

*     *     *

***Not final until disposition of timely filed motion for rehearing***