778 So.2d 542 (2001)
Damien Harvey COOPER, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D99-864.
District Court of Appeal of Florida, Third District.
March 14, 2001.
Frank P. Triola, Miami, for appellant.
Robert A. Butterworth, Attorney General, and Lisa A. Rodriguez, Assistant Attorney General, for appellee.
Before SCHWARTZ, C.J., and LEVY and SORONDO, JJ.

*543 ON MOTION FOR REHEARING DENIED

SORONDO, J.
We deny the state's motion for rehearing, but withdraw this court's opinion filed on January 31, 2001, and issue the following opinion in its place.
Damien Harvey Cooper, defendant, appeals a final judgment of conviction for the crime of first degree murder and life sentence without possibility of parole. He raises two issues in this appeal. First, defendant contends that the trial court erred when it permitted the state to introduce irrelevant collateral crime evidence in the form of the bullets found in his possession nine months after the murder, where these bullets were contained within a gun that the state had determined not to be the murder weapon. Second, he argues that the trial court erred when it denied his motion for mistrial during the state's closing argument where the prosecutor allegedly attacked defense counsel and argued facts that were not in evidence. We reject the second argument as being totally without merit, but choose to address the first.
On March 18, 1998, defendant was indicted for first degree murder. The state alleged that on March 6, 1996, defendant shot and killed Lundendorff Marc-Junior Fleuranvil. Seven spent casings were recovered from the shooting scene. Four of the casings were Winchester nine millimeter; the remaining three were A-merc nine millimeter casings.
On December 10, 1996, nine months after the murder, an officer made a traffic stop of a vehicle in which defendant was a passenger. Officers searched defendant and found him in possession of a loaded Smith & Wesson nine millimeter semi-automatic weapon, containing seven live rounds of A-merc nine millimeter ammunition. Defendant was arrested and charged with carrying a concealed firearm, to which he subsequently pled guilty.
Before trying the murder, the state filed a Notice of Intent to Rely on Evidence of Other Crimes, Wrongs, or Acts, seeking to introduce defendant's arrest on December 10, 1996. The state conceded that the weapon seized from defendant on December 10, 1996 was not the same firearm that was used to kill the victim on March 6, 1996. Nevertheless, the state sought to introduce both the gun and the ammunition.
After a lengthy hearing, the trial court excluded the firearm from evidence. However, the court allowed the state to introduce the A-merc ammunition, noting that the bullets' uniqueness was relevant to the fact that defendant had them in his possession on December 10, 1996.
The question presented is whether the trial court erred when it admitted evidence that defendant was in possession of the A-merc ammunition at the time of his arrest nine months after the homicide charged in the present case. We conclude that it did.
The relevant testimony, as pertinent to the admissibility of the ammunition seized from defendant, was that of firearms examiner Robert Kennington. During the pre-trial hearing, Mr. Kennington testified that A-merc brand ammunition was manufactured in Miami and had been in existence for the previous four to five years. He further testified that during that time he had only come across fired A-merc cartridges in the present case. On cross-examination he was questioned as follows:
Q. Do you know how many times A-merc examination [sic] has been evidence in the firearms laboratory in the last four years?
A: No.
Q: Do you know whether any of your other colleagues has ever been exposed to A-merc ammunition other than yourself?
A: I know one other examiner who said he has seen it more than twice himself but, I haven't talked to all of them. I *544 haven't checked with all seven examiners.
Preliminarily, we observe that this testimony does not constitute evidence of other crimes such that it would have to come into evidence through section 90.404(2)(a), Florida Statutes (1997). The simple possession of this type of ammunition is not a crime, wrong or bad act as contemplated by the statute. Accordingly, we do not analyze the admissibility of Mr. Kennington's testimony or the bullets under the Williams[1] rule line of cases. Instead, we consider the relevance of this evidence as relevance is defined by section 90.401, Florida Statutes (1997): "Relevant evidence is evidence tending to prove or disprove a material fact." The state's purpose in introducing this evidence was obviously to tie the defendant's possession of A-merc ammunition to the fired A-merc cartridges found at the scene of the homicide, in an effort to prove that defendant was the killer.
For two reasons we find the nexus between the crime charged and the ammunition taken from defendant was too attenuated to make the ammunition relevant. First, the state's evidence that the ammunition is unusual or rare was woefully inadequate. Mr. Kennington testified that the major manufacturers of ammunition are Winchester, Remington and Federal. He added that A-merc is a small, local manufacturer based in Miami. Although he testified that he had not come across this type of ammunition before this case, he also testified that one of his colleagues at the crime lab had encountered it in other cases. Additionally, Mr. Kennington admitted that there are a total of seven examiners in the lab and that he had not asked the other five whether they had any experience with this brand. There were no inquiries directed to the manufacturer to determine how many cartridges such as the ones in the present case had been manufactured, nor were any other law enforcement agencies questioned about their experiences with this type of ammunition. In short, the fact that Mr. Kennington has had little contact with this type of ammunition does not establish that it is unique or rare.
The second, and equally significant, reason is the temporal separation between the crime and the defendant's detention and seizure of the evidence. The victim in this case was killed on March 6, 1996. The ammunition in question was taken from defendant on December 10, 1996, a little more than nine months later. At that time, the bullets seized were contained within a firearm which was proven not to be the murder weapon in this case. The fact that defendant was in possession of this type of ammunition, manufactured by a local company and admittedly available on the open market, simply does not legitimately raise the inference the state wanted the jury to draw from this evidence, i.e., that the defendant was the killer because he was in possession of the same type of ammunition discovered on the scene. The evidence should have been excluded. See Sosa v. State, 639 So.2d 173 (Fla. 3d DCA 1994).
The state argues that even if the bullets taken from defendant on December 10, 1996, were not admissible, their admission was harmless beyond a reasonable doubt. We disagree.
Among the state witnesses who testified at the jury trial were: Carl Pierre, Luckney Henry and Benson Forestal.[2] Mr. Pierre testified that he saw defendant exit a white car from the passenger side, point a gun at the victim and say: "Remember me?" The victim uttered an expletive and began to run. Mr. Pierre heard seven to nine shots fired. He ran from the scene and returned sometime later. Initially, *545 Mr. Pierre told the police he did not know what had happened. He later identified defendant from a photo line-up as the shooter and signed the back of that photograph. At trial, Mr. Pierre identified defendant as the shooter. He also testified that he had not wanted to be a witness because he was afraid someone would go looking for him.
Mr. Henry testified he saw defendant exit the passenger side of a white older model car, carrying a silver handgun and heard defendant say: "Remember me?" As Mr. Henry ran away from the scene, he heard more than four shots fired. He returned to the scene some time later and told the police he caught a glimpse of the shooter. He then identified defendant from a photo line-up as the shooter. For reasons unclear from the record before us, the state decided to conduct a live line-up with Mr. Henry, two years after the homicide. At that time, he was unable to identify defendant. At trial, Mr. Henry identified defendant as the person who killed the victim.
Mr. Forestal heard seven gunshots fired behind him. He ran and turned around to see the victim holding his stomach and a black male getting into a white Cadillac, which he had seen earlier that day. Mr. Forestal did not make an identification.
The most significant aspect of the state's case was the testimony of Carl Pierre and Luckney Henry. Although arguments can be made to support the credibility of these witnesses, their testimony, the state argued, was significantly corroborated by the ballistics evidence which we have decided was erroneously admitted. In conducting a harmless error analysis, the Florida Supreme Court has warned that
the reviewing court must resist the temptation to make its own determination of whether a guilty verdict could be sustained by excluding the impermissible evidence and examining only the permissible evidence.
Goodwin v. State, 751 So.2d 537, 542 (Fla. 1999). In the earlier case of State v. DiGuilio, 491 So.2d 1129, 1139 (Fla.1986), the Court said: "The focus is on the effect of the error on the trier-of-fact. The question is whether there is a reasonable possibility that the error affected the verdict." Having reviewed these two cases, this Court said in Ousley v. State, 763 So.2d 1256, 1257 (Fla. 3d DCA 2000):
Harmlessness is not established, as the state seems to argue, when there is otherwise sufficient, even persuasive, evidence in the record to support the convictions. Nor, as it seems to suggest, is the pertinent test satisfied by our being pretty sure either that the defendant actually was guilty, or that the jury was not influenced by the error we have identified. Instead, ... we must be satisfied beyond a reasonable doubt that it did not contribute to the verdict.
(Citations omitted). Given the facts of this case, we are not satisfied beyond a reasonable doubt that the erroneously admitted evidence did not contribute to the verdict.
Reversed and remanded for a new trial.
NOTES
[1] Williams v. State, 110 So.2d 654 (Fla.1959).
[2] Messrs. Pierre and Forestal were fifteen years old at the time of the homicide and eighteen at time of trial. Mr. Henry was fourteen years old at the time of the homicide and seventeen at time of trial.