848 So.2d 1055 (2003)
James KNOWLES, Petitioner,
v.
STATE of Florida, Respondent.
No. SC01-2778.
Supreme Court of Florida.
June 12, 2003.
*1056 Richard J. D'Amico, Special Assistant Public Defender, Bartow, FL, for Petitioner.
Charles J. Crist, Jr., Attorney General, Robert J. Krauss, ChiefAssistant Attorney General, Chief of Criminal Law, Tampa, and Katherine V. Blanco, Senior Assistant Attorney General, Tampa, FL, for Respondent.
PARIENTE, J.
We have for review the decision in Knowles v. State, 800 So.2d 259 (Fla. 2d DCA 2001), which misapplies our decision in Goodwin v. State, 751 So.2d 537 (Fla. 1999). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.; see also Robertson v. State, 829 So.2d 901, 904 (Fla.2002) (stating that misapplication of supreme court decision creates conflict jurisdiction).
The pertinent facts are as follows. James Knowles shot and killed his ex-wife at her workplace. The grand jury indicted Knowles on charges of first-degree murder and aggravated assault. Knowles entered a plea to second-degree murder and aggravated battery. During the sentencing proceeding, Knowles presented the testimony of clinical psychologist Dr. Freid as to Knowles's state of mind prior to the homicide. The trial court imposed sentence. Later, Knowles sought and was granted postconviction relief on his claim that trial counsel rendered ineffective assistance in failing to properly advise Knowles prior to the plea on matters concerning the duration of his sentence. The trial court vacated the conviction and sentence, and reinstated Knowles's original plea of not guilty. Knowles went to trial on the original first-degree murder charge. See Knowles, 800 So.2d at 261. At the trial, the State called Dr. Freid to testify in its case-in-chief on the issue of premeditation. The defense objected, arguing that Dr. Freid's testimony should be barred because it flowed directly from the defective plea that had been vacated. The court overruled the objection, and Dr. Freid testified that Knowles made plans to kill both his ex-wife and himself, was legally sane at the time of the offense, and knew his conduct was wrong. See id. at 261-62.
On appeal, the Second District concluded that the trial court erred in allowing the State to elicit testimony from the former defense witness, Dr. Freid. The Second District ruled that the trial court's determination that the plea resulted from ineffective assistance rendered both the plea and the waiver of the privilege of confidentiality as to Dr. Freid's examination of Knowles involuntary and therefore a nullity. See id. at 263. The district court also ruled that the constitutional privilege against self-incrimination protected Knowles from the unfair use of Dr. Freid's previous testimony. See id. at 264. However, the court concluded that the error was harmless under Goodwin:

Goodwin mandates that the analysis must focus on how the error affects the trier of fact. Id. at 541. It would be inappropriate to uphold the jury verdict of guilty in this case by concluding that the permissible evidence alone would support the verdict. Instead, the conceptual framework for reviewing the record in its entirety is provided by the answer to the following question: "Do I, the judge, think that the error substantially influenced the jury's decision?" Id. at 545 (quoting O'Neal v. McAninch, 513 U.S. 432, 437, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995)).

*1057 A review of the record has convinced this court that the error did not substantially influence the jury's verdict and, therefore, upon the unique facts of this case, the error is harmless beyond a reasonable doubt.
Knowles, 800 So.2d at 264 (first emphasis added). Chief Judge Blue dissented, concluding that "[w]here, as in this case, the primary issue is the defendant's premeditation, I can think of nothing more harmful than the presentation of evidence of premeditation from the defendant's psychologist." Id. at 267 (Blue, C.J., dissenting).
In determining whether the Second District properly applied Goodwin, we briefly review our harmless error precedent beginning with State v. DiGuilio, 491 So.2d 1129 (Fla.1986). In DiGuilio, this Court held that an erroneous comment on a defendant's constitutional right to remain silent requires reversal and remand for a new trial unless the appellate court can conclude beyond a reasonable doubt that the error did not affect the verdict. Id. at 1135, 1139. The Court set out the test to be applied in determining whether trial error in a criminal case is harmful:
The test is not a sufficiency-of the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test. Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence. The focus is on the effect of the error on the trier-of-fact. The question is whether there is a reasonable possibility that the error affected the verdict. The burden to show the error was harmless must remain on the state. If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful.
Id. at 1139. Two years later, this Court reaffirmed the vitality of this test, holding that "reversal is mandated under ... DiGuilio... when the state fails to demonstrate beyond a reasonable doubt that there is no reasonable possibility that the erroneous admission of collateral crime evidence affected the jury verdict." State v. Lee, 531 So.2d 133, 134 (Fla.1988). We "decline[d] to modify the DiGuilio test to require only a showing that the permissible evidence would support the conviction in order to find the erroneous admission of improper collateral crime evidence harmless." Id. at 136.
In Goodwin, the Court was called upon to determine whether section 924.051(7), Florida Statutes (Supp.1996), abrogated the DiGuilio harmless error test in cases involving nonconstitutional error. In answering a certified question, this Court held that the provision did not alter the obligation of the appellate courts to independently review both constitutional and nonconstitutional errors for harmlessness under the DiGuilio standard. See Goodwin, 751 So.2d at 537. The Court specifically stated that it had determined in Lee that "this Court retains the authority to determine the analysis to be applied in deciding whether an error requires reversal." Id. at 542 (citing Lee, 531 So.2d at 136 n. 1).
Additionally, this Court in Goodwin emphasized the duty of a reviewing court to determine harmless error "regardless of any lack of argument on the issue by the state." Id. at 545. After pointing to passages in Heuss v. State, 687 So.2d 823 (Fla.1996), that supported this view, we stated:
These observations of our Court are consistent with those of the United States Supreme Court. As Justice Breyer recently observed in explaining *1058 why a burden of persuasion is ill-suited to the appellate process:
The case before us does not involve a judge who shifts a "burden" to help control the presentation of evidence at a trial, but rather involves a judge who applies a legal standard (harmlessness) to a record that the presentation of evidence is no longer likely to affect. In such a case, we think it conceptually clearer for the judge to ask directly, "Do I, the judge, think that the error substantially influenced the jury's decision?" than for the judge to try to put the same question in terms of proof burdens (e.g., "Do I believe the party has borne its burden of showing ...?")
O'Neal v. McAninch, 513 U.S. 432, 436-37, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).
751 So.2d at 545. This Court also stated:
Review of the record to ascertain whether the error is harmless is an essential and critical appellate function. For this reason, we hold that to shift the burden to the defendant would not only be an abdication of judicial responsibility, but could lead to the unjust result of an affirmance of a conviction even though the appellate court was not convinced beyond a reasonable doubt that the error did not affect the defendant's conviction.
Id. at 546.
O'Neal v. McAninch, 513 U.S. 432, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995), did not involve the discussion of harmless error in a direct appeal. Instead, O'Neal was a federal collateral attack on a state court conviction that was final. The discussion from O'Neal was meant to exemplify the difficulty in a defendant meeting the burden of showing that an error substantially influenced the outcome. The excerpt from O'Neal used in Goodwin merely served as an example of a harmless error inquiry unfettered by the consideration of whether a particular party has or has not met a burden with regard to harmlessness. It was not intended to alter or supplant the DiGuilio standard in any way. This Court in Goodwin reiterated the applicability of the DiGuilio standard in direct appeals: "If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful." Id. at 541 (quoting DiGuilio, 491 So.2d at 1139). We explicitly held that reviewing courts must continue to follow the DiGuilio test:
Thus ... we conclude that once the defendant has satisfied the burden of demonstrating that error has occurred, the DiGuilio standard of harmless error remains the applicable analysis to be employed in determining whether the error requires a reversal on direct appeal.
Id. at 546.
With the exception of Knowles, the district courts have correctly enunciated and applied the DiGuilio standard since Goodwin. See, e.g., Stires v. State, 824 So.2d 943, 946 (Fla. 5th DCA 2002); Kiner v. State, 824 So.2d 271, 273 (Fla. 4th DCA 2002); Coley v. State, 816 So.2d 817, 818-19 (Fla. 2d DCA 2002); Moore v. State, 798 So.2d 50, 53 (Fla. 1st DCA 2001); Cooper v. State, 778 So.2d 542, 545 (Fla. 3d DCA 2001). The Second District's conclusion that the error in this case was harmless because it did not "substantially influence the jury's verdict" is an unwarranted departure from the DiGuilio standard.
Because our use of the parenthetical quotation from O'Neal is the apparent source of the Second District's misapplication of Goodwin, we reaffirm that Goodwin did not alter the test of harmless error and that the DiGuilio standard remains the *1059 benchmark of harmless error analysis. "The question is whether there is a reasonable possibility that the error affected the verdict," DiGuilio, 491 So.2d at 1139, not whether the error substantially influenced the jury's verdict. "If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful." Id.
The Second District's use of the incorrect "substantial influence" test leaves us uncertain whether the application of the DiGuilio test would have yielded a different result in the district court. Therefore, we quash the decision below and remand to the district court for reconsideration of whether the error is harmless in light of our reaffirmation in this case of the DiGuilio standard. Cf. Goodwin, 751 So.2d at 547 (remanding one of two consolidated cases to the district court to reconsider its erroneous harmless error determination).
In remanding, we also reject Knowles's assertion that the erroneous admission of an expert witness's testimony bearing on intent is per se harmful error. Although the admission of testimony in violation of a defendant's attorney-client privilege and privilege against self-incrimination creates a high probability of harm, "[h]igh risk that an error will be harmful is not enough ... to justify categorizing the error as always harmful (per se)." DiGuilio, 491 So.2d at 1137. See also State v. Schopp, 653 So.2d 1016, 1020 (Fla.1995) (stating that high probability that an error is harmful does not justify categorizing the error as reversible per se).
Finally, we decline to address any additional issues raised by the parties that are beyond the scope of the conflict issue. See Asbell v. State, 715 So.2d 258, 258 (Fla. 1998) (declining to address additional issues raised during discretionary conflict review).
It is so ordered.
ANSTEAD, C.J., and LEWIS, QUINCE, and CANTERO, JJ., concur.
BELL, J., concurs in part and dissents in part with an opinion.
WELLS, J., dissents with an opinion.
BELL, J., concurring in part and dissenting in part.
If the harmless error question must be reached, I concur that this question must be remanded for reconsideration, applying the standard announced in Goodwin v. State, 751 So.2d 537 (Fla.1999). However, there is no need to reach the question of harmless error. Therefore, I, too, would affirm the district court on the basis of waiver pursuant to section 90.507, Florida Statutes (1993), as opined by Judge Green. Knowles v. State, 800 So.2d 259, 265 (Fla. 2d DCA 2001)(Green, J., concurring).
WELLS, J., dissenting.
My first preference would be to discharge jurisdiction. I have considerable doubt as to the constitutional underpinning of this Court's "misapplication jurisdiction." I do not find that concept or those words in article V, section 3(b), Florida Constitution.
Since the majority has taken this case, I again state my disagreement with the majority's decision in Goodwin v. State, 751 So.2d 537 (Fla.1999), for the reasons stated in my dissent in Goodwin. I continue to believe that this Court should apply section 924.051(7), Florida Statutes, as written. Thus, I would allow the district court's decision to stand in respect to harmless error.
Moreover, I would affirm the decision of the district court on the basis set out in the opinion of Judge Green.