# Supreme Court of Florida

_____

No. SC16-1164
_____

**W. RILEY ALLEN,**
Petitioner,

vs.

**JAIRO RAFAEL NUNEZ, et al.,**
Respondents.

October 4, 2018

LEWIS, J.

W. Riley Allen seeks review of the decision of the Fifth District Court of Appeal in *Nunez v. Allen*, 194 So. 3d 554 (Fla. 5th DCA 2016), on the basis that it expressly and directly conflicts with several appellate decisions of courts of this State regarding proposals for settlement, pursuant to section 768.79, Florida Statutes (2017), and Florida Rule of Civil Procedure 1.442, for the purpose of assessing attorney's fees. We have jurisdiction. *See* art. V, § 3(b)(3), Fla. Const.

## FACTUAL AND PROCEDURAL BACKGROUND

This case originates from a motor vehicle accident in which Gabriel Nunez was operating a vehicle owned by his father, Jairo Nunez,[1] when he struck a truck owned by Allen, which was lawfully parked along a street and unoccupied. *Id.* Allen filed a one-count complaint against Gabriel and Jairo alleging that Gabriel negligently operated the vehicle and that Jairo, as the owner of the vehicle, was vicariously liable for his son's negligent driving. *Id.* Allen sought damages for, among other things, the post-repair diminution in the value of his truck, the cost of the repairs, and the loss of use of his truck. *Id.* Respondents jointly answered the complaint. *Id.* Allen then served a separate proposal for settlement on each Respondent pursuant to Florida Rule of Civil Procedure 1.442. *Id.*

The proposal to Jairo provided:

1. This Proposal for Settlement is made pursuant to Florida Statute § 768.79, and is extended in accordance with the provisions of Rule 1.442, Fla. R. Civ. P.

2. The Proposal for Settlement is made on behalf of Plaintiff, W. RILEY ALLEN, and is made to Defendant, JAIRO RAFAEL NUNEZ.

3. This Proposal for Settlement is made for the purpose of settling any and all claims made in this cause by Plaintiff, W. RILEY ALLEN, against defendant, JAIRO RAFAEL NUNEZ.

---

1. Hereinafter, Gabriel and Jairo Nunez may be referred to collectively as Respondents or individually according to their first names.

4. That in exchange for TWENTY THOUSAND AND 00/100 DOLLARS ($20,000.00) in hand paid from defendant, JAIRO RAFAEL NUNEZ, Plaintiff agrees to settle any and all claims asserted against Defendant as identified in Case Number 2010–CA–25627–0, brought in and for the Circuit Court in and for Orange County, Florida.

5. This Proposal for Settlement is inclusive of all damages claimed by Plaintiff, W. RILEY ALLEN, including all claims for interest, costs, and expenses and any claims for attorney's fees.

*Id.* at 556 (footnote omitted). Allen contemporaneously served an identical proposal for settlement on Gabriel, except that Gabriel's name was substituted in place of Jairo. *Id.* Neither Respondent accepted his respective proposal; thus the proposals were considered rejected. *Id.*; *see also* Fla. R. Civ. P. 1.442(f)(1) ("A proposal shall be deemed rejected unless accepted by delivery of a written notice of acceptance within 30 days after service of the proposal.").

After securing a final judgment in the sum of $29,785.97, Allen filed a motion for attorney's fees pursuant to section 768.79, Florida Statutes, and Florida Rule of Civil Procedure 1.442. *Nunez*, 194 So. 3d. at 556. Respondents moved to strike Allen's proposals for settlement, contending that because paragraph 5 of the proposals stated that the monetary settlement was inclusive of all damages claimed by Allen, the proposals were ambiguous as to whether acceptance and payment of one of the $20,000 proposals for settlement would have resolved the case against both Respondents or only against the individual Respondent accepting the proposal. *Id.* at 557.

The trial court granted Allen's motion to enforce the proposals after finding the proposals for settlement were sufficiently clear and unambiguous; it was determined that Allen was entitled to be reimbursed $343,590 in attorney's fees and legal assistant's fees. *Id.* at 555, 557. Respondents appealed, asserting that the language contained in paragraph 5 of the proposals for settlement caused the proposals to be ambiguous and therefore unenforceable. *Id.* The Fifth District agreed, reasoning:

> Initially, paragraphs two, three, and four in each proposal for settlement make clear that payment of $20,000 by the [Respondent] named in the proposal would settle [Allen]'s claims brought in the case against that specific [Respondent]. However, paragraph five then stated that the proposal for settlement was inclusive of "all damages" claimed by [Allen]. As "all damages" claimed arguably are those that could have been (and were) imposed on both [Respondents] in this case, paragraph five of [Allen]'s proposal for settlement could be reasonably interpreted to mean that the acceptance of the proposal for settlement by only one of the [Respondents] resolved [Allen]'s entire claim against both [Respondents]. Put differently, if paragraph five had stated that the proposal was inclusive of all damages claimed by [Allen] against the individually named [Respondent], similar to the language in paragraph three of the proposal, there would have been no ambiguity.

*Id.* at 558 (emphasis omitted).

The district court relied on *Tran v. Anvil Iron Works, Inc.*, 110 So. 3d 923 (Fla. 2d DCA 2013), for support. *Nunez*, 194 So. 3d at 558. In *Tran*, the plaintiff was injured in an automobile accident and filed an action against the driver of the other vehicle and his corporate employer, which owned the vehicle. *Tran*, 110 So.

- 4 -

3d at 924. During litigation, plaintiff tendered separate proposals for settlement to the individual defendant and the corporate defendant. *Id.* Each proposal was specific as to the one defendant named therein and each stated that, as a condition of the proposal, the plaintiff would voluntarily dismiss, with prejudice, any and all claims against the specific defendant named in the proposal for settlement. *Id.* Attached to the proposal for settlement was a copy of the proposed notice of voluntary dismissal with prejudice to be filed if the proposal was accepted. *Id.* However, the attached dismissal notice named both defendants and indicated that the case would be dismissed against both defendants. *Id.* at 924-25. The Second District Court of Appeal affirmed the trial court's finding that the proposals for settlement were ambiguous because, while the body of the proposals did not indicate that both defendants would be dismissed, the notices of dismissal attached to the respective proposals did. *Id.* at 927. The district court held that the discrepancy could reasonably affect the decision to accept the proposal because one defendant might want to accept the proposal directed to it only if it knows for certain that its payment would result in the release of both defendants. *Id.* at 926 ("This may be especially significant in a case such as this where one defendant is the employer/owner of the car and the other defendant is the employee who was driving the car.").

Likewise, the decision below held that the language in the proposals themselves raised the legitimate question as to whether acceptance resolved Allen's claim for "all damages" against solely the named offeree or resolved the entire claim against both Respondents. *See Nunez*, 194 So. 3d at 559.

This review follows.

## ANALYSIS

Attorney's fees under offers of judgment are governed by section 768.79, Florida Statutes, and Florida Rule of Civil Procedure 1.442. In relevant part, section 768.79 reads:

(1) In any civil action for damages filed in the courts of this state . . . [i]f a plaintiff files a demand for judgment which is not accepted by the defendant within 30 days and the plaintiff recovers a judgment in an amount at least 25 percent greater than the offer, she or he shall be entitled to recover reasonable costs and attorney's fees incurred from the date of filing of the demand. . . .

(2) The making of an offer of settlement which is not accepted does not preclude the making of a subsequent offer. An offer must:

(a) Be in writing and state that it is being made pursuant to this section.

(b) Name the party making it and the party to whom it is being made.

(c) State with particularity the amount offered to settle a claim for punitive damages, if any.

(d) State its total amount.

The offer shall be construed as including all damages which may be awarded in a final judgment.

. . . .

(6) Upon motion made by the offeror within 30 days after the entry of judgment or after voluntary dismissal or involuntary dismissal, the court shall determine the following:

. . . .

(b) If a plaintiff serves an offer which is not accepted by the defendant, and if the judgment obtained by the plaintiff is at least 25 percent more than the amount of the offer, the plaintiff shall be awarded reasonable costs, including investigative expenses, and attorney's fees, calculated in accordance with the guidelines promulgated by the Supreme Court, incurred from the date the offer was served.

§ 768.79, Fla. Stat. The relevant portions of the current version of rule 1.442 provide:

(c) **Form and Content of Proposal for Settlement.**

(1) A proposal shall be in writing and shall identify the applicable Florida law under which it is being made.

(2) A proposal shall:

(A) name the party or parties making the proposal and the party or parties to whom the proposal is being made;

(B) state that the proposal resolves all damages that would otherwise be awarded in a final judgment in the action in which the proposal is served, subject to subdivision (F);

(C) state with particularity any relevant conditions;

(D) state the total amount of the proposal and state with particularity all nonmonetary terms of the proposal;

(E)  state with particularity the amount proposed to settle a claim for punitive damages, if any;

(F)  state whether the proposal includes attorneys' fees and whether attorneys' fees are part of the legal claim; and

(G)  include a certificate of service in the form required by rule 1.080.

(3)  A proposal may be made by or to any party or parties and by or to any combinations of parties properly identified in the proposal.  A joint proposal shall state the amount and terms attributable to each party.

(4)  Notwithstanding subdivision (c)(3), when a party is alleged to be solely vicariously, constructively, derivatively, or technically liable, whether by operation of law or by contract, a joint proposal made by or served on such a party need not state the apportionment or contribution as to that party.  Acceptance by any party shall be without prejudice to the rights of contribution or indemnity.

Fla. R. Civ. P. 1.442(c).  Proposals under the offer of judgment statute must strictly conform to these statutory and procedural requirements to entitle the offeror to attorney's fees because the statute is in derogation of the common law that ordinarily requires each party to pay for its own attorney's fees.  *See, e.g.*, *Pratt v. Weiss*, 161 So. 3d 1268, 1271 (Fla. 2015) (citing *Willis Shaw Express, Inc. v. Hilyer Sod*, 849 So. 2d 276, 278 (Fla. 2003); *Gershuny v. Martin McFall Messenger Anesthesia Prof'l Ass'n*, 539 So. 2d 1131, 1132 (Fla. 1989)).  This Court reviews a party's entitlement to attorney's fees pursuant to section 768.79 and rule 1.442 de novo.  *E.g.*, *Pratt*, 161 So. 3d at 1271 (citing *Frosti v. Creel*, 979 So. 2d 912, 915 (Fla. 2008)).

Additionally, the proposal must be sufficiently clear and free of ambiguity to allow the offeree the opportunity to fully consider the proposal. *State Farm Mut. Auto. Ins. Co. v. Nichols*, 932 So. 2d 1067, 1079 (Fla. 2006). Nonetheless, this Court has not required the elimination of every ambiguity—only reasonable ambiguities:

> We recognize that, given the nature of language, it may be impossible to eliminate all ambiguity. The rule does not demand the impossible. It merely requires that the settlement proposal be sufficiently clear and definite to allow the offeree to make an informed decision without needing clarification. If ambiguity within the proposal could reasonably affect the offeree's decision, the proposal will not satisfy the particularity requirement [of rule 1.442(c)(2)(C)-(D)].

*Id.* Ultimately, "[p]roposals for settlement are intended to end judicial labor, not create more." *Id.* (quoting *Lucas v. Calhoun*, 813 So. 2d 971, 973 (Fla. 2d DCA 2002)). Accordingly, courts are discouraged from "nitpicking" proposals for settlement to search for ambiguity. *Carey-All Transp., Inc. v. Newby*, 989 So. 2d 1201, 1206 (Fla. 2d DCA 2008) (citing *Nichols*, 932 So. 2d at 1079).

This Court recently rejected an argument that a nearly identical settlement proposal was ambiguous and therefore unenforceable on the matter of attorney's fees. *Anderson v. Hilton Hotels Corp.*, 202 So. 3d 846 (Fla. 2016). *Anderson* involved an armed robbery, carjacking, and shooting that occurred in the parking lot of an Embassy Suites hotel in Orlando, Florida. *Id.* at 848. Troy Anderson filed an action against Hilton Hotels Corporation (Hilton), W2007 Equity Inns

Realty, LLC (W2007), Interstate Management Company, LLC (Interstate), and SecurAmerica, LLC, for negligence. *Id.* Anderson's wife, Paula Anderson, also sought damages for loss of consortium. *Id.* at 849. Anderson proposed offers of settlement to Hilton, W2007, Interstate, and SecurAmerica. *Id.* The offer made to Hilton, it its entirety, stated:

> *PROPOSAL FOR SETTLEMENT ON BEHALF OF PLAINTIFF, TROY [ANDERSON], PURSUANT TO RULE 1.442*
>
> Plaintiff, TROY ANDERSON, by and through his undersigned attorneys, hereby serves his Proposal for Settlement, pursuant to Rule 1.442 of the Florida Rules of Civil Procedure, to Defendant, HILTON HOTELS CORPORATION, a foreign corporation, doing business as EMBASSY SUITES ORLANDO AT INTERNATIONAL DRIVE AND JAMAICAN COURT, also doing business as HILTON WORLDWIDE, and states in support thereof as follows:
>
> 1. This Proposal for Settlement is made pursuant to Florida Statute § 768.79, and is extended in accordance with the provisions of Rule 1.442. Fla. R. Civ. P.
>
> 2. This Proposal for Settlement is made on behalf of Plaintiff, TROY ANDERSON ("PLAINTIFF"), and is made to Defendant, HILTON HOTELS CORPORATION, a foreign corporation, doing business as EMBASSY SUITES ORLANDO AT INTERNATIONAL DRIVE AND JAMAICAN COURT, also doing business as HILTON WORLDWIDE ("HILTON").
>
> 3. This Proposal for Settlement is made for the purpose of settling any and all claims made in this cause by PLAINTIFF against HILTON.
>
> 4. That in exchange for SIX HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS ($650,000.00) in hand paid from HILTON, PLAINTIFF agrees to settle any and all claims asserted against HILTON, as identified in Case Number 2009–CA–040473–O, brought in the Circuit Court in and for Orange County, Florida.

5. This Proposal for Settlement is inclusive of all damages claimed by PLAINTIFF, including all claims for interest, costs, and expenses and any claims for attorney's fees.

*Id.* The offers to each defendant were identical other than the specifically designated party and the specific amount proposed. *Id.* Paula Anderson also made separate offers, identical to those of Anderson, to each of the defendants. *Id.* Prior to trial, however, Paula dismissed her cause of action. *Id.* Anderson obtained a favorable jury verdict that was twenty-five percent greater than the settlement offer and subsequently sought attorney's fees. *See id.* at 850, 857-58. The trial court and the Fifth District both concluded that the term "PLAINTIFF" in paragraph 5 of Anderson's offer could reasonably be interpreted to include both Anderson and his wife, Paula. *Id.* at 850-51.

On appeal, this Court acknowledged that the proposal clearly and consistently used the singular term "PLAINTIFF," defined as Troy Anderson in paragraph 2. *Id.* at 855. This Court also recognized that paragraph 3 indicated that each proposal was designed to settle "any and all claims of PLAINTIFF [Troy Anderson] against [RESPONDENT]," clearly delineating that the only parties to be affected by acceptance would be Troy Anderson and the designated Respondent. *Id.* This Court further noted that the offer made by Troy Anderson made no reference to Paula Anderson or her loss of consortium claim, "which Anderson was not obliged to address in his claim." *Id.* Paula Anderson had made

- 11 -

her own separate, nearly simultaneous offers to each of the Respondents. *Id.* This Court then held that

> [i]f a party receives two simultaneous offers from two separate parties, common sense dictates that the offeree should possess all the information necessary to determine whether to settle with one or both of the offerors. In reading the entirety of Anderson's proposals, the only reasonable interpretation is that Troy Anderson offered to settle only his claims with each Respondent in his offer.

*Id.* (emphasis omitted) (citation omitted). Thus this Court quashed the Fifth District's holding that Anderson's proposals for settlement were ambiguous. *Id.* at 858.

The Second District has also rejected arguments that similar settlement proposals were ambiguous and therefore unenforceable on the matter of attorney's fees. *See Miley v. Nash*, 171 So. 3d 145 (Fla. 2d DCA 2015); *Bright House Networks, LLC v. Cassidy*, 242 So. 3d 456 (Fla. 2d DCA 2018).

*Miley* involved an accident between Martha Nash and Kyle Miley in a car owned by his father, Glenn Miley. 171 So. 3d at 147. Martha filed a complaint against Kyle and Glenn seeking damages for her injuries; Garfield Nash, Martha's husband, also sought damages for loss of consortium. *Id.* Martha and Garfield Nash pursued their claims against Glenn Miley solely under a theory of vicarious liability. *Id.* Prior to trial, Kyle offered a settlement proposal to Martha in "an attempt to resolve all claims and causes of action resulting from the incident or accident giving rise to this lawsuit brought by Plaintiff Martha Nash against

- 12 -

Defendant Kyle Miley." *Id.* The proposal contained a condition that Martha dismiss her claims against both Kyle and Glenn, but did not address Garfield Nash's pending claim for loss of consortium, which was ultimately dropped prior to trial. *Id.* After Martha obtained a favorable jury verdict that was significantly less than the amount in Kyle's offer, the trial court denied Kyle's motion for attorney's fees for five reasons: the proposal (1) failed to specifically identify the claims to be resolved by it; (2) failed to address Garfield Nash's loss of consortium claim; (3) failed to state with particularity any relevant conditions; (4) failed to state the amount and terms attributable to each party; and (5) required dismissal of both Kyle and Glenn without attributing the payment owed. *Id.*

On appeal, the Second District reversed and concluded that the proposal complied with rule 1.442. *Id.* Although the district court acknowledged that the language in the terms "all claims" that "[gave] rise to the lawsuit" could have been more definite, it concluded that these terms were not so ambiguous as to prevent Martha Nash from making an informed decision about settling her claim. *Id.* at 148. The district court also held that the proposal did not need to address Garfield Nash's claim for loss of consortium, which was a separate and derivative claim. *Id.* at 148-49 ("Because the proposal explicitly stated that it was to cover all claims brought by Martha Nash, it was not deficient for failing to address the other pending claim in the lawsuit brought by an entirely different plaintiff."). The

district court also concluded that the particularity requirement had been satisfied and further held that apportionment with respect to Glenn Miley was not required because he was only alleged to be vicariously liable. *Id.* at 149 (citing Fla. R. Civ. P. 1.442). Thus the Second District reversed the trial court's order denying attorney's fees. *Id.* at 150.

In *Cassidy*, five members of the Cassidy family filed a one-count complaint for breach of contract against Bright House. 242 So. 3d 458. Bright House served one proposal for settlement on Albert B. Cassidy, who did not accept the proposal. *Id.* Bright House filed a motion for attorney's fees and costs after the trial court entered summary judgment in its favor. *Id.* The trial court denied Bright House's motion because paragraph 4 of the proposal stated that acceptance of the offer would dismiss "all claims" against Bright House. *Id.* The trial court found that paragraph 4 created ambiguity with regard to which claims were to be dismissed. *Id.* The Second District reversed, holding that the proposal did not contain a level of ambiguity that would "render Albert B. Cassidy unable to make an informed decision without needing clarification." *Id.* at 460.

> Albert B. Cassidy has no authority to cause the other plaintiffs' claims to be dismissed. It is clear that the Proposal was made only to Albert B. Cassidy and that the Proposal defines the claims to be resolved as those asserted in this action by Offeree (Albert B. Cassidy) against Offeror (Bright House).

*Id.* The district court held that, when read as a whole, there was no ambiguity within the proposal that would reasonably affect Albert B. Cassidy's decision. *Id.* Thus the district court reversed the trial court's order denying attorney's fees. *Id.*

The Fourth District Court of Appeal has likewise rejected similar attempts to inject ambiguity into otherwise sufficient proposals. *See Kiefer v. Sunset Beach Invs., LLC*, 207 So. 3d 1008 (Fla. 4th DCA 2017); *Costco Wholesale Corp. v. Llanio-Gonzalez*, 213 So. 3d 944 (Fla. 4th DCA 2017); *Alamo Fin., L.P. v. Mazoff*, 112 So. 3d 626 (Fla. 4th DCA 2013); *Land & Sea Petroleum, Inc. v. Bus. Specialists, Inc.*, 53 So. 3d 348 (Fla. 4th DCA 2011).

In *Kiefer*, Sunset Beach Investments, LLC (Sunset Beach), filed an action asserting claims of professional negligence against Kiefer, Kimley-Horn, and two licensed engineers. 207 So. 3d at 1009. While the case was pending, Kiefer served Sunset Beach a proposal for settlement that included a required release as a condition of the agreement. *Id.* Simultaneously, each of the other codefendants served separate proposals for settlement on Sunset Beach. *Id.* Sunset Beach did not accept any of the proposals. *Id.* Kiefer prevailed on a motion for summary judgment, obtained judgment in his favor as to the only claim asserted against him, and subsequently filed a motion for attorney's fees based upon the rejected proposal for settlement. *Id.* at 1009-10. The trial court denied Kiefer's motion after finding the release attached to the proposal for settlement to be ambiguous.

- 15 -

*Id.* at 1010. The trial court found ambiguity with the fact that, unlike each of the other paragraphs of the proposal for settlement and release, the fifth and sixth paragraphs of the release were not specifically limited to Kiefer and Sunset Beach. *Id.* The fifth paragraph in question stated that the release covered "any and all claims for attorney's fees, costs and premiums, as a result of the incident and matters set forth in the lawsuit." *Id.* The sixth paragraph stated that Sunset Beach would release all claims that related to the lawsuit. *Id.* On appeal, the Fourth District reversed and held that the settlement proposal was unambiguous. *Id.* at 1011. The district court held that, when read as a whole, the release related to Sunset Beach and Kiefer and not the other codefendants. *Id.* The district court relied on *Anderson* in holding the proposal for settlement was not ambiguous due to the fact that other claims remained and other parties were not mentioned. *Id.* at 1012. Thus the Fourth District reversed the trial court's order denying attorney's fees. *Id.*

In *Llanio-Gonzalez*, Costco Wholesale Corporation (Costco) served a proposal for settlement on Elaine Llanio-Gonzalez, who brought an action for her injuries in a slip and fall. 213 So. 3d at 945. Costco also served a proposal for settlement on Luis Gonzalez for his loss of consortium claim. *Id.* Each proposal included a required release as a condition of the agreement. *Id.* The attached releases provided that each plaintiff would release Costco and "all related,

- 16 -

associated or affiliated companies" from any and all claims. *Id.* The plaintiffs did not accept Costco's proposals for settlement and Costco ultimately prevailed on a motion for summary judgment. *Id.* at 946. Costco then moved for attorney's fees after obtaining judgment in its favor. *Id.* The trial court denied Costco's motion after finding the releases attached to the proposals for settlement to be ambiguous. *Id.* The trial court found ambiguity with the fact that each proposal for settlement contained narrow language offering to release only the defendant but the attached releases contained broader language releasing individuals and entities in addition to Costco. *Id.* On appeal, the Fourth District agreed with Costco that the proposals were unambiguous and were therefore enforceable. *Id.* at 947. The district court held that although the attached releases were more expansive, their effect was the same. *Id.* The district court held that the proposals for settlement and accompanying releases were sufficiently clear and definite to allow the plaintiffs to make an informed decision on whether to accept the proposals. *Id.* Thus the Fourth District reversed the trial court's order denying attorney's fees. *Id.*

*Alamo Financing* involved a motor vehicle accident between plaintiff, Matthew Mazoff, and defendant, Paola Alvarado-Fernandez; Alamo Financing owned the vehicle driven by Alvarado-Fernandez, while a separate entity, Alamo Rental (US), Inc., leased the vehicle to Alvarado-Fernandez. 112 So. 3d at 627. Mazoff sought damages from Alamo Financing and Alvarado-Fernandez, alleging

specifically that Alamo Financing was vicariously liable for Alvarado-Fernandez's negligence. *Id.* Alamo Financing proposed an offer of settlement to Mazoff that contained a condition that Mazoff would release Alamo Financing and "their parent corporations, subsidiaries, officers, directors, and employees" from any and all claims. *Id.* Mazoff subsequently moved to add Alamo Rental as a defendant after learning that Alamo Rental was the entity that leased the car. *Id.* at 628.

Alamo Financing unsuccessfully moved for attorney's fees after obtaining judgment in its favor. *Id.* On appeal, the Fourth District agreed with Alamo Financing that the proposal was not ambiguous and was therefore enforceable. *Id.* The district court rejected Mazoff's argument that the language "all Claims made in the present action by the party to whom this proposal is made including any claims that could be made against Defendant ALAMO FINANCING, L.P., which arise out of the same occurrence or event set forth in this action," could extinguish Mazoff's claims against Alvarado-Fernandez. *Id.* at 629-30. Specifically, the district court acknowledged that when read in isolation, this clause could suggest that Mazoff's separate claims against Alvarado-Fernandez may be affected by his acceptance of Alamo Financing's offer; nonetheless, the context of the entire offer indicated that Alamo Financing was the only offeror and the only party to be dismissed from suit upon Mazoff's acceptance. *Id.* at 630. The Fourth District similarly dispensed with Mazoff's suggestion that the proposal was unenforceably

- 18 -

ambiguous because it could have constituted a release of Alamo Rental, which was not a party to the lawsuit at the time the offer was made. *Id.* at 630-31.

In *Land & Sea Petroleum*, a seller made two separate proposals for settlement with the two different brokers with whom it was engaged in a contract dispute. 53 So. 3d at 351-52. Other than the name of the individual broker, the proposals were identical and indicated that they would resolve "any and all claims that could have been or should have been brought" by the individually named broker against the seller upon payment of $500. *Id.* at 352. Neither broker accepted its respective proposal. *Id.* The seller prevailed on a motion for summary judgment and subsequently moved for attorney's fees. *Id.* In response, the brokers contended that the proposals were ambiguous because they did not specify which side would pay the $500 and did not specify the claims that the proposals would settle. *Id.* The trial court ultimately denied the seller's motion for attorney's fees; on appeal, however, the Fourth District reversed. *Id.* at 352-53. The district court held that, because the only relationship that existed between the brokers and the seller arose from the brokerage contract, there were no other possible claims which could have existed between the parties either within or outside of the action. *Id.* at 353-54. The district court also held that it was apparent that the seller was offering to pay each of the brokers $500 in exchange for resolving the brokers' respective claims because the brokers were suing for a commission and the seller raised no

counterclaim. *Id.* at 353 ("The brokers' reliance on the fact that the seller did not expressly state that it would be the party paying the $500 seems to be the type of 'nit-picking' which the second district cautioned against in *Carey-All*.").

There can be no doubt this Court possesses discretion to exercise jurisdiction in this case. The dissent convolutes and misstates discretionary and subject-matter jurisdiction within the Florida Constitution. Jurisdiction exists where a decision of a district court expressly and directly conflicts with a decision of another district court of appeal or of this Court on the same question of law. Art. V, § 3(b)(3), Fla. Const.; *see also Knowles v. State*, 848 So. 2d 1055, 1056 (Fla. 2003) (accepting jurisdiction based on conflict created by misapplication of decisional law); *Robertson v. State*, 829 So. 2d 901, 904 (Fla. 2002) (stating that misapplication of decisional law creates conflict jurisdiction); *Acensio v. State*, 497 So. 2d 640, 641 (Fla. 1986) (accepting jurisdiction based on conflict created by misapplication of decisional law). The decision below expressly and directly conflicts with this Court's decision in *Anderson* and the decisions of the Second and Fourth Districts in *Miley*, *Cassidy*, *Kiefer*, *Llanio-Gonzalez*, *Alamo Financing*, and *Land & Sea Petroleum*. In each of the *seven* conflict cases discussed, the point of law at issue was whether an offer by a single offeror to a single offeree was considered sufficiently clear and enforceable, although it did not address separate pending claims of other parties to the litigation. However, in the decision below the Fifth

- 20 -

District determined that such an offer was ambiguous and unenforceable because it could have possibly affected the unaddressed claims of the other codefendant. Therefore, we properly have jurisdiction on this matter and quash the decision below.[2]

The reading of Allen's offers as espoused by the Respondents and the Fifth District was unreasonable under these circumstances and in contravention of this Court's direction in *Nichols*. Each proposal clearly and consistently used the singular term "PLAINTIFF," which was defined as W. Riley Allen in paragraph 2. Moreover, paragraph 3 indicated that each proposal was designed to settle "any and all claims of PLAINTIFF against [RESPONDENT]," which by its clear terms suggested that the only parties to be affected by the proposal would be Allen and the designated Respondent. In reading the entirety of this proposal, the only reasonable interpretation is that Allen offered to settle his claims with only the Respondent specified in each respective proposal.

---

2. Tellingly, the dissent states that this Court's jurisprudence "in this area of the law seems inconsistently applied and unpredictable," but "[e]ven if there are other cases . . . in conflict, I would not exercise jurisdiction." Dissenting op. at 27 note 3. However, the purpose of conflict review is the elimination of inconsistent views about the same question of law. *See* Gerald Kogan & Robert Craig Waters, *The Operation and Jurisdiction of the Florida Supreme Court*, 18 Nova L. Rev. 1151, 1231 (1994). Therefore it is paramount this Court exercise jurisdiction to eliminate any inconsistencies in this area of law. *See, e.g.*, *Wainwright v. Taylor*, 476 So. 2d 669, 670 (Fla. 1985).

- 21 -

If two codefendants each receive a proposal for settlement, in which they are specifically named, each codefendant should possess all the information necessary to determine whether to settle. *See Nichols*, 932 So. 2d at 1079 ("[T]he settlement proposal [must] be sufficiently clear and definite to allow the offeree to make an informed decision without needing clarification."). In this context, it appears disingenuous to assert that there exists a legitimate question as to whether one codefendant's acceptance could have settled the offeror's claim against the other codefendant.

The Respondents' interpretation of the proposal for settlement ignores the well-established principle that "the intention of the parties must be determined from an examination of the entire contract and not from separate phrases or paragraphs." *Moore v. State Farm Mut. Auto. Ins. Co.*, 916 So. 2d 871, 875 (Fla. 2d DCA 2005). Thus, any potential ambiguity in paragraph 5 is resolved by examining the proposal for settlement as a whole.

Therefore, we conclude that the proposal was unambiguous for the purpose of determining Allen's entitlement to attorney's fees.

## CONCLUSION

Reading the plain language of Allen's offers, we hold that these offers to settle his claims against the Respondents were unambiguous. The "nitpicking" of these offers by the district court below to find otherwise unnecessarily injected

- 22 -

ambiguity into these proceedings and created more judicial labor, not less. *Cf.*

*Nichols*, 932 So. 2d at 1079. Furthermore, the plain language of both section

768.79 and Florida Rule of Civil Procedure 1.442 indicate that Allen's entitlement

to attorney's fees was actualized after he submitted sufficient offers and obtained

satisfactory judgments in his favor. Therefore, we quash the decision below and

remand for further proceedings consistent with this opinion.

It is so ordered.

PARIENTE, QUINCE, and LABARGA, JJ., concur.
PARIENTE, J., concurs with an opinion.
POLSTON, J., dissents with an opinion, in which CANADY, C.J., and LAWSON, J., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

PARIENTE, J., concurring.

I fully concur in the majority's conclusion that the proposal for settlement in

this case was unambiguous, and thus enforceable. Majority op. at 22. I write

separately to, once again, highlight the proliferation of litigation surrounding

proposals to settle, which runs counter to the entire purpose of these proposals—to

reduce litigation. In light of the exorbitant amount of litigation, I urge courts to

focus on the goal of reducing litigation when reviewing a proposal for settlement.

Additionally, because it is "impossible to eliminate all ambiguity," courts must

remember that a proposal need only "be sufficiently clear and definite to allow the

- 23 -

offeree to make an informed decision without needing clarification." *State Farm Mut. Auto. Ins. Co. v. Nichols*, 932 So. 2d 1067, 1079 (Fla. 2006).

As the majority explains, proposals for settlement are governed by section 768.79, Florida Statutes (2017), and Florida Rule of Civil Procedure 1.442. Majority op. at 6. Under section 768.79, if a plaintiff serves a proposal for settlement, which the defendant does not accept "and the plaintiff recovers a judgment in an amount at least 25 percent greater" than the proposal, the plaintiff is entitled to recover reasonable costs and attorney's fees. § 768.79(1). The defendant can, likewise, recover reasonable costs and attorney's fees if the plaintiff fails to accept the defendant's proposal and "the judgment is one of no liability or the judgment obtained by the plaintiff is at least 25 percent less than" the defendant's proposal. *Id.* Rule 1.442 sets forth the procedure for serving proposals for settlement, the form these proposals should take, and the substance they should include.

This Court has explained that rule 1.442 "was implemented solely to encourage settlements in order to eliminate trials if possible." *Unicare Health Facilities, Inc. v. Mort*, 553 So. 2d 159, 161 (Fla. 1989); *see Cheek v. McGowan Elec. Supply Co.*, 511 So. 2d 977, 981 (Fla. 1987). Despite the intended purpose of the rule, however, I have expressed concern as to "whether either the rule or the statute is fulfilling its intended purpose of encouraging settlement or at times is

having the opposite effect of increasing litigation." *Campbell v. Goldman*, 959 So. 2d 223, 227 (Fla. 2007) (Pariente, J., specially concurring); *see Lamb v. Matetzschk*, 906 So. 2d 1037, 1042-43 (Fla. 2005) (Pariente, C.J., specially concurring); *Sec. Prof'ls Inc. v. Segall*, 685 So. 2d 1381, 1384 (Fla. 4th DCA 1997).

In *Lamb*, the Court interpreted rule 1.442 "to require differentiated offers of judgment, regardless of whether the offer emanates from or is directed to joint parties who have a common interest." 906 So. 2d at 1042 (Pariente, C.J., specially concurring). Specifically, the Court "prohibit[ed] a joint offer by a plaintiff directed towards two defendants, one of whom [wa]s only vicariously liable for the acts of the other defendant." *Id.* at 1044 (Pariente, C.J., specially concurring). I questioned whether this approach would actually foster the primary goal of rule 1.442 to encourage settlements and reduce litigation, particularly in cases "where the liability of one defendant is based on vicarious liability and the issue of vicarious liability is undisputed." *Id.* (Pariente, C.J., specially concurring).

Likewise, in *Campbell*, I "reluctantly agree[d]" with the majority's conclusion that section 768.79 and rule 1.442 "require[d] that an offer of settlement cite the Florida law on which it is based." 959 So. 2d at 227 (Pariente, J., specially concurring). My reluctance stemmed from the fact that "there was no lack of clarity, uncertainty, or confusion" in the offer in *Campbell*, because

although the plaintiff's offer did not mention the statute, the offer did specify that it was made pursuant to rule 1.442. *Id.* (Pariente, J., specially concurring). Thus, it was a minor omission, not an actual ambiguity, that spawned an unnecessary amount of litigation.

This case presents another example of unnecessary litigation prompted by a clearly unambiguous proposal for settlement. As the majority explains, by "nitpicking" the precise wording of the proposals in this case, the district court "unnecessarily injected ambiguity into these proceedings and created more judicial labor, not less." Majority op. at 22-23. Rather than comb through the terms of a proposal in search of ambiguity, I again urge courts to refrain "from 'nitpicking,' " and find a proposal unenforceable only when there is a *reasonable* ambiguity as to its meaning. *Anderson v. Hilton Hotels Corp.*, 202 So. 3d 846, 853 (Fla. 2016) (quoting *Carey-All Transp., Inc. v. Newby*, 989 So. 2d 1201, 1206 (Fla. 2d DCA 2008)).

POLSTON, J., dissenting.

Because the Fifth District's decision in *Nunez v. Allen*, 194 So. 3d 554, 556 (Fla. 5th DCA 2016), does not expressly and directly conflict with the decisions

argued by the Petitioner during jurisdictional briefing, this Court does not have the constitutional authority to review this case.[3]  Accordingly, I respectfully dissent.

Specifically, this case is distinguishable from *Anderson v. Hilton Hotels Corp.*, 202 So. 3d 846 (Fla. 2016).  In *Anderson*, 202 So. 3d at 849, 854-55, this Court considered whether the term "Plaintiff" in separate proposals for settlement from two different plaintiffs to multiple defendants could reasonably be construed to include both plaintiffs.  This Court held that the proposals for settlement were unambiguous as they were clearly only intended to settle the claims of the individual plaintiff named in the proposals.  *Id.*  In contrast, in this case, there was only one plaintiff who sent two proposals for settlement to two different defendants, a father and son.  *Nunez*, 194 So. 3d at 556.  The Fifth District determined that the proposals for settlement were ambiguous because it was unclear whether the language "all damages claimed by the Plaintiff" (where both defendants were coextensively liable for all of the alleged damages) meant that payment of the delineated amount (which was the same figure in both proposals) would settle the case as to one or both of the defendants.  *Id.* at 558.  Therefore, because there was only one plaintiff in *Nunez* rather than the two plaintiffs

---

3. In my view, our jurisprudence in this area of the law seems inconsistently applied and unpredictable.  Even if there are other cases cited by the majority (not argued by the Petitioner) that are in conflict, I would not exercise jurisdiction.

involved in *Anderson*, and because different clauses were analyzed, *Nunez* and *Anderson* do not conflict.

Additionally, *Nunez* is not in conflict with *Kuhajda v. Borden Dairy Co. of Alabama*, 202 So. 3d 391 (Fla. 2016). In *Kuhajda*, 202 So. 3d at 395, this Court considered whether an offer for settlement must meet a requirement stated in Florida Rule of Civil Procedure 1.442 that is not listed in section 768.79, Florida Statutes. This Court in *Kuhajda*, 202 So. 3d at 395, also considered whether "the failure to include the attorney's fees language in the offer of judgment" created ambiguity when attorney's fees were not sought in the pleadings. Therefore, because *Kuhajda* addressed different issues of law than *Nunez*, the decisions do not conflict.

Accordingly, because there is no express and direct conflict between *Nunez* and the decisions argued by the parties during jurisdictional briefing, this Court does not have the authority to review this case. I respectfully dissent.

CANADY, C.J., and LAWSON, J., concur.

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions

Fifth District - Case No. 5D14-4386

(Orange County)

W. Riley Allen of Riley Allen Law, Orlando, Florida; and Thomas D. Hall of The Mills Firm, P.A., Tallahassee, Florida,

for Petitioner

Elizabeth C. Wheeler of Elizabeth C. Wheeler, P.A., Orlando, Florida,

for Respondents